12 B.R. 60 (1981)
In re Yolanda and Matthew CAIRONE, Debtors.
RHODE ISLAND LOTTERY COMMISSION, Plaintiff,
v.
Yolanda and Matthew CAIRONE, Defendants.
Bankruptcy No. 8000210, Adv. No. 800231.
United States Bankruptcy Court, D. Rhode Island.
June 17, 1981.
*61 John P. Hawkins, Hawkins & Hoopis, Providence, R.I., for R.I. Lottery Commission.
Louis A. Geremia, Providence, R.I., for debtors.
ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.
Heard on January 27, 1981 on the complaint of the Rhode Island Lottery Commission to determine the dischargeability of a debt which Plaintiff alleges is nondischargeable pursuant to 11 U.S.C. § 523(a)(4).
The parties have stipulated to the following facts: On April 12, 1974 the Debtors procured a Lottery Sales Agent License (No. 53519) from the Rhode Island State Lottery Commission, and began selling tickets to the State Lottery Numbers Game. Between January and March, 1978 the Debtors failed to remit proceeds of sales in the amount of $8,920.69 to the Plaintiff, and because of that, the Debtors' license was revoked. The parties also agree that the proceeds in question are trust funds according to R.I.Gen. Laws § 42-61-6. That statute provides:
All proceeds from the sale of lottery tickets or shares received by a person in the capacity of a sales agent shall constitute a trust fund until paid into the state lottery fund.
The sales agent shall be personally liable for all proceeds which shall be kept separate and apart from all other funds and assets and shall not be commingled with any other funds or assets.
It is undisputed that the Debtors breached their statutory duty by failing to remit the proceeds to the Plaintiff. The issues before this court are whether the statutory trust created by R.I. Gen. Laws § 42-61-6 establishes a fiduciary relationship within the meaning of 11 U.S.C. § 523(a)(4),[1] and if such a relationship did exist, were the Debtors guilty of a defalcation[2] within that *62 relationship, so as to render the debt for failure to remit those proceeds nondischargeable.
Plaintiff argues that R.I. Gen. Laws § 42-61-6 created a trust which imposed a fiduciary duty on the Debtors, and that this fiduciary duty was breached when the Debtors defalcated by failing to remit the proceeds from the sale of lottery tickets.
The traditional definition of a "fiduciary" is not applicable in bankruptcy law. The general meaning  a relationship involving confidence, trust and good faith  is far too broad. The fiduciary relationship referred to in § 523(a)(4) has been held to be limited to express and technical trusts. Davis v. Aetna Acceptance Co., 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934). The characteristics of an express trust include an explicit declaration of the creation of a trust, a clearly defined trust res, and an intent to create a trust relationship. 89 C.J.S. Trusts § 22, at 734-35. The trustee's duties must be independent of any contractual obligations between the parties and must be imposed prior to, rather than by virtue of, any claim of misappropriation. Davis v. Aetna Acceptance Co., supra; Chapman v. Forsyth, 43 U.S. (2 How.) 202, 11 L.Ed. 236 (1844); Besroi Construction Corp. v. Kawczynski, 442 F.Supp. 413 (W.D.N.Y.1977); 1A Collier on Bankruptcy ¶ 17.24, at 17.08 (14th ed. 1976). Thus, implied or constructive trusts and trusts ex maleficio, i.e., trusts imposed because of wrongdoing on the part of the person to be charged as trustee, Black's Law Dictionary 1356 (5th ed. 1976), are not susceptible to the establishment of a fiduciary relationship under the Code. Davis v. Aetna Acceptance Co., supra; In re Thornton, 544 F.2d 1005 (9th Cir. 1976); Central Hanover Bank & Trust Co. v. Herbst, 93 F.2d 510 (2d Cir. 1937). Similarly, ordinary commercial relationships such as creditor-debtor and principal-agent[3] have been held not to create a fiduciary relationship in the bankruptcy context. Angelle v. Reed, 610 F.2d 1335 (5th Cir. 1980); Devaney v. Dloogoff, 600 F.2d 166 (8th Cir. 1979).
R.I. Gen. Laws § 42-61-6 in straightforward, no-frills language specifically prescribes that the funds received from the sale of lottery tickets be held as a "trust fund" by the agent until he [she] remits them to the Lottery Commission. The statute imposes trust-like duties on the agent in handling the funds, requiring the proceeds to be segregated from all other monies and holding the sales agent personally liable for all collected proceeds. Under the statute, the trust commences when the lottery ticket purchaser advances money to the agent for a lottery ticket, and therefore, it is clear that the trust arises prior to, rather than by virtue of, any defalcation.
In those respects this case is similar to Besroi Construction Corp. v. Kawczynski, 442 F.Supp. 413 (W.D.N.Y.1977), where the debtor building contractor misapplied funds advanced by contracting parties. That court found the debtor to be a fiduciary based upon the New York Lien Law, which provides for a clearly defined res, requires a contractor to keep detailed records of advances and to segregate advanced funds, and makes it a crime to use such funds for any purpose other than that for which they were advanced. By entering into a contract subject to the Lien Law, the parties became constructively charged with an intent to create a trust relationship. Id., at 417.
The instant case presents an even clearer situation, since the Rhode Island statute specifically refers to the relationship between the Lottery Commission and its agent as a "trust."[4]
*63 The facts in this case distinguish it from the conclusions reached in Angelle v. Reed, supra; Devaney v. Dloogoff, supra; and Schlecht v. Thornton, 544 F.2d 1005 (9th Cir. 1976) which held that the existence of a state statute did not create an express trust. In each of those cases, the courts were construing statutes that merely made the misappropriation of funds a crime. There was no explicit reference to a trust, nor a requirement of segregation of funds. In all three cases, the statute became operative only after a misappropriation; no trust existed prior to the defalcation. See discussion of these cases, Angelle v. Reed, 610 F.2d at 1338-41.
In this action, Debtors rely on the well settled principle that exceptions to discharge should be limited to those clearly expressed in the statute. Gleason v. Thaw, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915). Exceptions which are not expressly included in the provisions are excluded by implication. United States v. Robinson, 359 F.Supp. 52 (S.D.Fla.1973). The Debtors urge that because the Code is silent as to the dischargeability of trust funds per se, Congress did not intend to except debts arising from the wrongful use of trust funds from dischargeability.
This Court must disagree with the Debtors' proposed application of statutory construction. Section 523(a)(4) excepts from discharge any debt for defalcation arising from a fiduciary relationship. It is not necessary that the Code specifically enumerate all debts that may potentially fall within this category. By applying for and accepting a Lottery Sales Agent license, the Debtors became subject to the obligations imposed by the State, including the requirement that the monies they collected belonged to the State of Rhode Island and were to be held by them in trust for the State until delivered to the Commission. The relationship between the Cairones and the Lottery Commission was clearly of a fiduciary nature.
The next issue is whether, in their fiduciary position, the Cairones committed a defalcation. In Central Hanover Bank & Trust Co. v. Herbst, 93 F.2d 510 (2d Cir. 1937), Judge Learned Hand noted that although, colloquially, the word "defalcation" ordinarily implies some moral dereliction, in a bankruptcy context it may include innocent default, including all fiduciaries who for any reason were short in their account. Id., at 511. Construing § 17(a)(4) of the Bankruptcy Act of 1898, 11 App. U.S.C.A. § 35(a)(4), (1979), the predecessor to § 523(a)(4), Judge Hand, writing for the Second Circuit, held "that when a fiduciary takes money upon a conditional authority which may be revoked and knows at the time it may, he is guilty of a `defalcation' though it may not be a `fraud,' or an `embezzlement,' or perhaps not even a `misappropriation.'" Id., at 512. The Herbst decision affirmed a ruling by the district court, 22 F.Supp. 353 (S.D.N.Y.1937), which defined "defalcation" as "the failure of one who has received moneys in trust to pay it over as he ought. It is a broader word than fraud, embezzlement or misappropriation, and covers cases where there was no fraud, embezzlement, or willful misappropriation on the part of the bankrupt." Id., at 354. See also, Union Mutual Life Insurance Co. v. Murphy, 9 B.R. 167 (E.D.Va.1981); In re Newman, 2 BCD 894 (S.D.N.Y.1976); United States Fidelity and Guaranty Co. v. Burn, 2 BCD 1299 (E.D.Pa.1976). Similarly, in First Citizens Bank and Trust Co v. Parker, 225 N.C. 480, 35 S.E.2d 489, 492 (1945) defalcation was viewed as "the failure of a fiduciary to account for money received in his fiduciary capacity."
Based on these precedents, the unexplained failure of the Debtors to remit to the Lottery Commission the proceeds they obtained during their fiduciary relationship with the Commission, is defalcation within the meaning of § 523(a)(4).
Accordingly, the debt in controversy falls within the scope of § 523(a)(4), and is excepted from discharge. The Debtors are hereby determined to be indebted to the Rhode Island Lottery Commission in the amount of $8,920.69, plus interest and costs.
NOTES
[1] Section 523(a)(4) provides in pertinent part: A discharge under Section 721, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt  (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4).
[2] The Plaintiff does not allege any act of fraud on the part of the Debtors.
[3] The term "agent" is used here to describe the legal relationship existing between the parties, and not the mere titles used to refer to particular individuals. The fact that the R.I. Gen. Laws § 42-61-6 makes the "agent" personally liable without regard to the circumstances in which the loss occurred clearly removes the relationship from that of principal-agent.
[4] State law plays an important role in determining the existence of a trust relationship. Angelle v. Reed, supra. Cf. Jaffke v. Dunham, 352 U.S. 280, 77 S.Ct. 307, 1 L.Ed.2d 314 (1957) (determination of whether trust established under § 70(a)(4), 11 App. U.S.C.A. § 110(a)(4) (1979), is one of state law).