In re Nancy S. MARCHIANDO, Debtor.

**STATE OF ILLINOIS, DEPARTMENT OF LOTTERY, Plaintiff,**

v.

**Nancy S. MARCHIANDO, Defendant.**

**Bankruptcy No. 91 B 30422.
Adv. No. 91 A 3069.**

United States Bankruptcy Court,
N.D. Illinois, W.D.

Feb. 24, 1992.

Bradley J. Waller, Dekalb, Ill., for debtor.

James D. Newbold, Chicago, Ill., for Dept. of Lottery.

## MEMORANDUM OPINION

RICHARD N. DeGUNTHER, Bankruptcy Judge.

This matter comes before the Court on a Motion for Summary Judgment ("Motion"), filed by the Debtor–Defendant, Nancy S. Marchiando ("Debtor"). The Motion targets a Complaint to Determine Dischargeability of a Debt and for Judgment ("Complaint"), filed by the State of Illinois, Department of Lottery ("Department").

This Memorandum Opinion shall represent findings of fact and conclusions of law, pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

On October 1, 1983, the Debtor opened and began to operate a grocery store in Sycamore, Illinois.[1]

In December of 1983, the State of Illinois licensed the Debtor to serve as an agent for the Department in conducting the Illinois lottery.

On February 26, 1991, the Debtor filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 101–1330 (1988) [hereinafter Code]. An attached Schedule A–3 listed "The Illinois State Lottery" (the Department) as the holder of an unsecured claim without priority, in the amount of $16,000. An attached Schedule B–2 indicated that the Debtor possessed personal property valued at $8,380.00, including $2,580.00 in cash and $300.00 in a checking account.

On May 6, 1991, the Department filed a Proof of Claim in the total amount of $16,-639.95, consisting of $15,977.77 in principal

---

**1.** The Debtor's pleadings speak in terms of the Debtor and her husband acting, while the Department's pleadings speak in terms of the Debtor acting. This factual discrepancy, to whatever degree it is relevant, is not resolvable at this point, especially in the absence of any supporting documentation for the Department's claim. As such, for the purposes of this Memorandum Opinion, the Court will continue to refer to the Debtor as *the* actor.

amount and $662.18 in additional charges arising from a "2% finance charge thru 12/31/90 in accordance with state statute."

On June 21, 1991, the Department filed its Complaint, charging the Debtor with failure to perform a statutory duty in failing to segregate lottery proceeds in a trust account for the Department's benefit and in failing to pay over such proceeds to the Department on demand. The Complaint further charged the Debtor with conversion where she used such proceeds for her own business and personal needs. The Complaint argued for a determination that the debt owed to the Department is nondischargeable under Section 523(a)(4) of the Code.

The Debtor filed an Answer on July 16, 1991, and an Amended Answer on August 6, 1991. The Debtor admits that she failed to segregate lottery proceeds and that she owed the Department approximately $16,639.95. The Debtor, however, denies that the debt is nondischargeable.

On August 14, 1991, the Debtor filed her Motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, made applicable in adversary proceedings through Rule 7056 of the Federal Rules of Bankruptcy Procedure. The Debtor confined her discussion to the "issue of defalcation while acting in a fiduciary capacity" because, as the Debtor notes, the Department failed to allege fraud, embezzlement, or larceny.[2] The Debtor argues that defalcation can only arise with reference to an "express trust." The Debtor further argues that an express trust is not automatically created through the application of Section 10.3 of the Illinois Lottery Law, Ill.Rev.Stat. ch. 120, paras. 1151–78 (1989). The Debtor states, "The use of the term trust fund [in Section 10.3] to describe the character of said funds, does not transform a mere agency relationship into a fiduciary relationship for bankruptcy purposes." The Debtor argues that her relationship with the Department was merely contractual in nature and was discharged in bankruptcy. The Debtor states, "Legislative enactments

cannot create a higher duty when in reality none exists in the first instance."

On October 16, 1991, the Department filed an Answer of State of Illinois, Department of Lottery to Motion for Summary Judgment. The Department argues that the Motion is, in fact, a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable in adversary proceedings through Rule 7012(b) of the Federal Rules of Bankruptcy Procedure. Therefore, the Department assumed that the Debtor targets a "failure to state a cause of action for which relief can be granted." Accordingly, the Department treated all factual matters pled in the Complaint as "admitted for purposes of deciding the [M]otion." Alternatively, the Department argues that the Motion should be denied on its face for failing to comply with local rules.

On October 16th, the Department also filed a Memorandum of Law of State of Illinois, Department of the Lottery in Opposition to Motion for Summary Judgment. The Department defends against Debtor's Motion, arguing that where a statute creates the necessary elements of a trust, "the so called 'statutory trust' creates a fiduciary status for purposes of bankruptcy discharge." The Department argues that a lottery agent agrees to be bound by "the controlling lottery laws" at the time of licensing. Section 10.3, the Department argues, creates a trust relationship. The Department further argues that Section 10.4 of the Illinois Lottery Law supports this reading where it imposes criminal liability with possible incarceration for violations of Section 10.3; otherwise, imprisonment for debt would violate Article I, Section 14 of the Illinois Constitution of 1970.

On November 4, 1991, the Debtor filed a Reply to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment. Procedurally, the Debtor concedes that the facts are not in dispute but argues that a question of law can be treated through either a motion for summary judgment or a motion to dismiss.

---

**2.** Subsequently, in a memorandum of law filed by the Department on October 16, 1991, the Department narrows its argument to the defalcation issue as well.

Substantively, the Debtor argues that a mere debtor-creditor relationship existed between the Debtor and the Department, rather than a fiduciary relationship.

On November 6, 1991, the Court heard the arguments of counsel and took the matter under advisement.

### PROCEDURE

Rule 56(c) of the Federal Rules of Civil Procedure, in relevant part with emphasis added, states:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, *if any,* show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Furthermore, Rules 56(a) and 56(b) enable a claimant or defendant to move for summary judgment "with or without supporting affidavits." As such, a party need not supply affidavits in order to move for summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

Here, the Debtor's Motion does not fail because she did not supply affidavits.

As a procedural device, however, a Rule 56 motion for summary judgment appears to target disputes in which parties debate whether genuine issues of material fact exist. The careful reader, however, notes

that a court shall render summary judgment where two situations are present: (1) where there is no genuine issue as to any material fact and (2) where the moving party is entitled to a judgment as a matter of law.

Here, the parties agree that no genuine issue as to any material fact exists. The parties disagree that the Department is entitled to a judgment as a matter of law. As in the normal course of a Rule 56 motion, where the court reviews the material facts in a case, the court must now review the law in this case and determine whether summary judgment is appropriate. A motion to dismiss may have been more artful. Nevertheless, a motion for summary judgment is an acceptable means of accomplishing the Debtor's end here.

■ Of course, proceeding with a motion for summary judgment breeds certain responsibilities under local rules. General Rule 12(m) of the General Rules of the United States District Court for the Northern District of Illinois[3] requires the party moving for summary judgment to file a supporting memorandum of law and a statement of material facts as to which it contends there is no genuine issue.[4] Failure to file a statement constitutes grounds for denying the motion for summary judgment *Herhold v. City of Chicago,* 723 F.Supp. 20, 22 n. 1 (N.D.Ill.1989). Under General Rule 12(n), the party opposing the motion must also file a supporting memo-

---

**3.** The Department refers to General Rule 12(e) of the General Rules of the United States Bankruptcy Court for the Northern District of Illinois. Such general rules were promulgated with reference to and adoption of certain general rules of the District Court which were in effect at that time. The May 6, 1986, General Order which adopted such general rules, adopted them "as amended from time to time." As such, this Court directly references the general rules of the District Court where they provide more contemporary and appropriate procedural guidance and where they provide for consistency between this Court and the "referring" District Court. Accordingly, General Rule 12(m) of the District Court governs a movant's responsibilities in moving for summary judgment.

**4.** General Rule 12 states, in relevant part:
(m) Motions for summary judgment; Moving party. With each motion for summary judg-

ment pursuant to Rule 56 of the Federal Rules of Civil Procedure the moving party shall serve and file, in addition to the affidavits (if any) and other materials referred to in Rule 56(e) and a supporting memorandum of law, a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law including a description of the parties and all facts supporting venue and jurisdiction in this Court. That statement shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a statement constitutes grounds for denial of the motion.

randum of law along with a "concise response." [5]

Here, the Court notes that the Debtor has failed to comply with General Rule 12(m) in failing to provide a statement as prescribed by that general rule.[6] Such failure can and often does dampen a motion for summary judgment where the parties remain mired in a swamp of confusing facts.

■ Nevertheless, in this case, the Court will not rule against the Debtor because of her failure to comply with General Rule 12(m), especially where the material facts are not at issue. Instead, the Court will address the issues raised in the Motion and memoranda of law, and decide whether the Debtor is entitled to a judgment as a matter of law.

## DISCUSSION

The Complaint seeks to hold the "debt" owed to the Department nondischargeable under Section 523(a)(4). Under Section 523(a)(4), "A discharge under [Chapter 7] ... does not discharge an ... individual debtor from any debt ... for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.[7]

■ To hold the debt of a "fiduciary" nondischargeable under Section 523(a)(4), the creditor must show:

(1) that an express trust existed,

(2) that the debt was caused by fraud or defalcation, and

(3) that the debtor acted as a fiduciary to the creditor at the time the debt was created.

*Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir.1987); *In re Blumberg*, 112 B.R. 236, 239 (Bankr.N.D.Ill.1990).

■ Generally, an express trust is created by an agreement between two parties to impose a trust relationship. *In re Janikowski*, 60 B.R. 784, 788 (Bankr.N.D.Ill. 1986). "The usual elements of an express trust traditionally have included an explicit declaration of trust, a clearly defined trust *res*, and an intent to create a trust relationship." *Id.* at 789; *accord Harasymiw v. Selfreliance Fed. Credit Union*, 97 B.R. 924, 926 (N.D.Ill.1989), *aff'd*, 895 F.2d 1170 (7th Cir.1990). Some courts also have recognized the creation of a "technical express trust" where a statute expressly imposes fiduciary obligations on a party. *Janikowski*, 60 B.R. at 789. But, a contractual relationship arising out of a loan transaction does not create the required express trust. *Harasymiw*, 97 B.R. at 926. In essence, an implied trust does not suffice. *In re Sax*, 106 B.R. 534, 538–39 (Bankr. N.D.Ill.1989).

Section 10.3 of the Illinois Lottery Law states with emphasis added and footnotes omitted:

All proceeds from the sale of lottery tickets or shares received by a person in

---

5. General Rule 12 states, in relevant part:

(n) Motions for summary judgment; Opposing party. Each party opposing a Rule 56 motion shall serve and file, together with opposing affidavits (if any) and other materials referred to in Rule 56(e) and a supporting memorandum of law, a concise response to the movant's statement. That response shall contain (1) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and (2) a statement, consisting of short numbered paragraphs, of any additional facts which require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon. All material facts set forth in the statement required of the moving party will be deemed to be admitted

unless controverted by the statement of the opposing party.

6. General Rule 12(n) requires the party opposing a motion for summary judgment to file a concise response which responds to each numbered paragraph in the movant's statement. Here, the Debtor's failure to provide a statement obviated the Department's need to so respond.

7. Section 523(a)(4) provides four separate grounds for holding a debt nondischargeable: fiduciary fraud, fiduciary defalcation, embezzlement, and larceny. Contrary to the Court's oft repeated advice, the Department did not specify which of the grounds apply here. Fortunately, the parties have focused the issues through their pleadings. As such, the Court ignores the embezzlement and larceny grounds and reviews the fiduciary fraud and fiduciary defalcation grounds.

the capacity of a sales agent *shall constitute a trust fund* until paid to the Department either directly, or through the Department's authorized collection representative. Proceeds shall include unsold instant tickets received by a sales agent and cash proceeds of sale of any lottery products, net of allowable sales commissions and credit for lottery prizes paid to winners by sales agents. Sales proceeds and unsold instant tickets shall be delivered to the Department or its authorized collection representative upon demand. Sales agents shall be personally liable for all proceeds which shall be kept separate and apart from all other funds and assets and shall not be commingled with any other funds or assets. In the case of a sales agent who is not an individual, personal liability shall attach to the owners and officers of the sales agent. The Department shall have a right to file a lien upon all real and personal property of any person who is personally liable under this Section for any unpaid proceeds, which were to be segregated as a trust fund under this Section, at any time after such payment was to have been made. Such lien shall include any interest and penalty provided for by this Act and shall be deemed equivalent to, and have the same effect as, the State tax lien under the Retailers' Occupation Tax Act. The term "person" as used in this Section, and in Section 10.4 of this Act, shall have the same meaning as provided in Section 10 of this Act. This Section, and Sections 10.4 and 10.5 of this Act shall apply with respect to all lottery tickets or shares generated by computer terminal, other electronic device, and any other tickets delivered to sales agents on and after September 1, 1987.

■ Assuming the debt at issue was created through dealings with lottery tickets or shares or other tickets which were delivered to the Debtor on and after September 1, 1987, the initial hurdle (and key issue here) arises: Does Section 10.3 create an express trust and thereby invite a finding of nondischargeability under Section 523(a)(4)?

Despite the burgeoning number of states which run lotteries, only two reported cases discuss the pursuit of agents under Section 523(a)(4).

The first case arose through pursuit by the Rhode Island Lottery Commission ("Commission") in the early 1980s. *In re Cairone*, 12 B.R. 60 (Bankr.D.R.I.1981), involved stipulated facts which trace the facts in the case at bar: The Commission licensed the debtors to sell lottery tickets. The debtors sold lottery tickets but failed to remit proceeds to the Commission. The debtors filed a petition for relief under the Code, and the Commission filed a complaint to determine dischargeability under Section 523(a)(4).

The *Cairone* litigants *agreed* that the proceeds in question were "trust funds" under a Rhode Island statute which provided:

All proceeds from the sale of lottery tickets or shares received by a person in the capacity of a sales agent shall constitute a trust fund until paid into the state lottery fund.

The sales agent shall be personally liable for all proceeds which shall be kept separate and apart from all other funds and assets and shall not be commingled with any other funds or assets.

*Id.* The litigants initially focused the attention of the court on "whether the statutory trust created by R.I.Gen.Laws § 42–61–6 [as quoted above] establishes a fiduciary relationship within the meaning of 11 U.S.C. § 523(a)(4)."

The *Cairone* court recognized that the fiduciary relationship under Section 523(a)(4) was "limited to express and technical trusts" and that implied or constructive trusts and trusts ex maleficio were not susceptible to a finding of a similar fiduciary relationship. *Id.* at 62. "Similarly, ordinary commercial relationships such as creditor-debtor and principal-agent having been held not to create a fiduciary relationship in the bankruptcy context." *Id.* (footnote omitted).

The *Cairone* court noted that the statute removed the relationship from that of a

principal-agent by imposing personal liability on the "agent" without regard to the circumstances in which the loss occurred. *Id.* at 62 n. 3. The court further explained:

> R.I.Gen.Laws § 42–61–6 in straightforward, no-frills language specifically prescribes that the funds received from the sale of lottery tickets be held as a "trust fund" by the agent until he [she] remits them to the Lottery Commission. The statute imposes trust-like duties on the agent in handling the funds, requiring the proceeds to be segregated from all other monies and holding the sales agent personally liable for all collected proceeds. Under the statute, the trust commences when the lottery ticket purchaser advances money to the agent for a lottery ticket, and therefore, it is clear that the trust arises prior to, rather than by virtue of, any defalcation.

*Id.* at 62.

The *Cairone* court held that an express (statutory) trust had existed, that the debtors were acting as fiduciaries, and later, that the debtors committed defalcation. As such, the court held that the debt was nondischargeable under Section 523(a)(4).

The next case arose through pursuit by the Connecticut Division of Special Revenue ("Division"). *In re Schusterman,* 108 B.R. 893 (Bankr.D.Conn.1989), involved facts which also trace the facts in the case at bar: The Division licensed the debtors to sell lottery tickets. The debtors commingled proceeds from the sale of lottery tickets with other general revenue from their store and failed to remit such proceeds to the Division. The debtors filed a voluntary petition under Chapter 7 of the Code, and the Division filed a complaint to determine dischargeability under Section 523(a)(4).

The Division argued that under a Connecticut statute and accompanying regulations, the method of selecting agents for the sale of lottery tickets made such agents fiduciaries for the Division under an express trust. *Id.* at 894. Judge Robert Krechevsky recognized that the Division had pursued a similarly-situated debtor under Section 523(a)(4)'s similar predecessor and the same Connecticut statute but different regulations over nine years before *Schusterman.*

*In re Great Oak Farms, Inc.,* No. H–79–542 (Bankr.D.Conn. Apr. 29, 1980) (attached to *Schusterman* ), involved a debtor which executed an application for a license which detailed nine "conditions for licensing." *Schusterman,* 108 B.R. at 896. The fifth condition along with a regulation provided that all lottery tickets which were accepted by the licensed agent, were "deemed to have been purchased" by the agent unless they were returned. The word "trust" was not used in the statute, regulations, or conditions. But, the Division argued, the debtor was acting in a fiduciary capacity.

In deciding *Great Oak,* Judge Krechevsky found that the language used between the parties was that of agency and not that of trust. *Id.* at 900. Judge Krechevsky discussed several cases, and heavily relied on *Chapman v. Forsyth,* 43 U.S. (2 How.) 202, 11 L.Ed. 236 (1844), for the proposition that "fiduciary capacity" in bankruptcy requires an express trust and that the frauds of mere agents (so-called "factors") do not bring about nondischargeability. *Id.* at 897. Judge Krechevsky found that the language used in the case before him, "[was] consistent with the establishment of a commission sales arrangement and inconsistent with the establishment of a fiduciary relationship." *Id.* at 900.

In *Schusterman,* the Division was proceeding under revised regulations which provided:

> The issuance of a license by the division to any person as a lottery sales agent shall constitute acceptance by the agent of the following conditions:

> (1) *Fiduciary relationship.* An agent shall assume, in the sale of lottery tickets and the receipt of revenue therefrom, a fiduciary relationship with the division and state of Connecticut.

> All moneys received by lottery sales agents from the sale of lottery tickets shall constitute a trust fund until paid into the depository designated by the division. The sales agent ... shall be personally liable for all such lottery ticket

proceeds which shall be kept separate and apart from all other funds and assets and shall not be commingled with any other funds or assets of the lottery sales agent.

*Id.* at 894. Judge Krechevsky, however, found that *Great Oak* was properly decided and that the revisions in the regulation did not alter the result. He found that the Division had simply changed the words of a contractual transaction without changing the substance of the arrangement, as in *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934).

In *Davis,* a company lent a dealer a certain sum of money to purchase a car. In exchange, the dealer provided the company with a promissory note, a chattel mortgage, a bill of sale, and "a trust receipt, acknowledging receipt of the automobile, and agreeing to hold it as property of the [company] for the purpose of storage, and not to sell, pledge, or otherwise dispose of it except upon consent in writing." The dealer sold the car without the consent of the company, failed to remit the proceeds to the company, and filed a petition in bankruptcy. The company pursued the debt, seeking to except it from discharge in bankruptcy where the dealer's fraud or misappropriation occurred while he acted in a fiduciary capacity.

The Supreme Court, however, recognized that the only writing which even suggested that a trust existed was the so-called "trust receipt." *Id.* at 334, 55 S.Ct. at 154. The Supreme Court noted:

> The substance of the transaction is this, and nothing more, that the mortgagor, a debtor, has bound himself by covenant not to sell the mortgaged chattel without the mortgagee's approval. The resulting obligation is not turned into one arising from a trust because the parties to one of the documents have chosen to speak of it as a trust.... The relationship would be no different if the duty had been stated in terms of covenant without descriptive epithet. A mortgagor in possession before condition broken is not a trustee for the mortgagee within the meaning of this statute, though he has

charged himself with a duty to keep the security intact.

*Id.* The Supreme Court reversed the lower courts which had ruled in favor of the company.

In *Schusterman,* Judge Krechevsky similarly found that the debtors were not acting as fiduciaries under the Connecticut statute and regulations. 108 B.R. at 895. Judge Krechevksy explained:

> At bottom, the [Division] is operating a gambling business designed, at least in part, to raise revenue. The [Division] uses agents to sell the inventory (lottery tickets) of this business, and the relationship between the [Division] and its agents cannot by the use of "descriptive epithets" transform, for the sole purpose of negating the discharge provisions of federal bankruptcy laws, an otherwise dischargeable debt into a nondischargeable debt.

*Id.*

Here, the situation is similar to that in *Cairone* and *Schusterman.* The situation differs from *Schusterman* where the word "trust" was used in a regulation there and is used in a statute here. Nevertheless, Judge Krechevsky provides the better analysis. Here, a mere creditor-debtor/commercial relationship existed between the Department and the Debtor.

The Department runs a business. As with any business, the Department contracts with agents who essentially buy certain goods and sell them as a department store might. Here, the Debtor acquired certain lottery tickets and attempted to sell them while being compensated in the process. *See* Ill.Rev.Stat. ch. 120, para. 1171. Section 21 of the Illinois Lottery Law called upon the Debtor to return unsold lottery tickets in a certain period of time; otherwise, the tickets would be "deemed to have been purchased by the [Debtor]." Section 21 further called upon the Debtor to pay over the monies received from sales, less an amount retained as compensation and less an amount paid out in the form of prizes. As such, the price paid for the tickets was their retail value, less the compensation and less the prizes.

It would be inimical to the purpose and philosophy of the discharge in bankruptcy to permit the legislature of each state to overcome the ordinary creditor-debtor/commercial relationship by enacting laws which circumvent and thereby defeat the goal of the fresh start for debtors in bankruptcy. Here, the State of Illinois is attempting to transform normally dischargeable debts of one of its agencies into nondischargeable debts through the enactment of a self-serving statute.

The self-serving nature of the statute is analogous to the contract cases. *See, e.g., Harasymiw v. Selfreliance Fed. Credit Union,* 97 B.R. 924, 926–27 (N.D.Ill.1989) (contractual relationship arising out of loan transaction is insufficient to create required express trust, and is that of debtor and creditor); *In re Long,* 44 B.R. 300, 305 (Bankr.D.Minn.1983) (language indicating that remittances would be held in express trust may have provided cause of action for breach of contract but not for nondischargeability).

The self-serving nature of the statute is not analogous to the statutory or other cases in which there is a public purpose of protecting third parties, such as those dealing with general contractors, directors of banks, attorneys, or insurance agents. *See, e.g., In re Thomas,* 729 F.2d 502, 506 ("Municipalities would find it much harder and much more costly to find willing contractors for public improvement without the protection afforded them by [a Wisconsin statute which created a trust fund for the payment of subcontractors]."); *In re Sax,* 106 B.R. 534, 538–39 (Bankr.N.D.Ill. 1989) ("The debtor, as director of the Bank, was explicitly entrusted with control over the bank's funds."); *In re Janikowski,* 60 B.R. 784, 788–89 (Bankr.N.D.Ill.1986) ("It would shock the conscience of the ethical attorney and average client were we to conclude that [the ethical mandates imposed on attorneys] lose significance inside the doors of the Bankruptcy Court."); *In re Gagliano,* 44 B.R. 259, 261 (Bankr. N.D.Ill.1984) (Illinois statute creates trust independently of act giving rise to debt and imposes fiduciary duty of remitting funds to insurance company).

If permitted, a governmental unit could effectively erect a barrier to discharge for its own agencies by simply transforming what is otherwise a commercial transaction into a fiduciary relationship by use of such phraseology as "shall constitute a trust fund" in a statute. Legislatively calling something a "trust fund" is no more effective than contractually calling something a "trust receipt."

The state, through the power of the legislature, attempts to place itself in a favored position that other creditors cannot achieve. This is further evidenced in baldfaced fashion in Section 10.5(e) of the Illinois Lottery Law, where the state attempts to create its own exception to discharge: "[P]roceeds [from the sale of lottery tickets] shall be nondischargeable in insolvency proceedings instituted pursuant to Chapter 7, Chapter 11, or Chapter 13 of the Federal Bankruptcy Act [sic]." Since when did Congress provide for an opt out of the exceptions to discharge found under Section 523 of the Code?

\* \* \* \* \* \*

Although it is not necessary for a decision here, the Court should also mention that it is concerned with what may be called the "awareness of a fiduciary status" by the agent. The status of "fiduciary" is not to be taken lightly. One would expect a person who is a fiduciary to know that he or she is a fiduciary, and to be able to act accordingly. There is no evidence offered which would enable the Court to make a finding on the question, but one must wonder how many lottery agents in Illinois are aware that state law would impose fiduciary duties on them. One might even wonder if most lottery agents know what a fiduciary is, and what the implications of being a fiduciary are.

## CONCLUSION

Here, neither an express trust nor a fiduciary relationship flows from the Illinois Lottery Law. Therefore, the debt owed by the Debtor to the Department is discharge-

able. An Order consistent with this Memorandum Opinion is filed herewith.