In re Lester A. KACZYNSKI and Danuta M. Kaczynski, Debtors.

STATE of New Jersey, Plaintiff,

v.

Lester A. KACZYNSKI and Danuta M. Kaczynski, Defendants.

Bankruptcy No. 94–37171.
Adv. No. 95–3119TS.

United States Bankruptcy Court,
D. New Jersey.

Nov. 22, 1995.

Daniel J. Zirrith, Wong, Tsai & Fleming, Edison, New Jersey, for Lester and Danuta Kaczynski.

Gregory L. Van Dyck, Deputy Attorney General, Trenton, New Jersey, for State of New Jersey.

### MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

This is the court's decision on a complaint under section 523(a)(4) of title 11, United States Code (hereinafter the "Bankruptcy Code" or "Code"). The defendant debtors were lottery sales agents who failed to turn over proceeds of lottery tickets which they sold, and failed to account for other tickets which they received from the New Jersey Lottery Commission. The complaint asserts that such failure constitutes defalcation by the debtors in a fiduciary capacity, rendering their debt to the Commission nondischargeable under Code section 523(a)(4). The primary question addressed in this opinion is whether lottery sales agents in New Jersey act in a fiduciary capacity within the meaning of that section. For the reasons which follow, the court holds that lottery sales agents in this state are fiduciaries under that section. This court has jurisdiction under 28 U.S.C. §§ 1334(b), 151 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). The court's findings of fact, which were set forth on the record after trial on October 17, 1995, are summarized below, together with the court's conclusions of law.

### FACTS

Lester and Danuta Kaczynski (hereinafter "debtors") are the principals of JMark, Inc., which owned and operated a deli and convenience store named Bizzy Buzzy. On or about March 9, 1992, the debtors applied for and received a license as a lottery sales agent from the New Jersey Lottery Commission (hereinafter "Commission"). The debtors maintained a lottery machine and also han-

dled manual sales of tickets at the Bizzy Buzzy. On November 7, 1994, both Bizzy Buzzy and the debtors filed petitions for relief under chapter 7 of the Bankruptcy Code.

The New Jersey Rules of the Lottery Commission prescribe that the debtors were to maintain the lottery tickets in trust and were to deposit the daily proceeds from the sale of the tickets in a segregated bank account. The debtors opened the required account at First Fidelity Bank in Metuchen, New Jersey. The funds deposited into the debtors' account were electronically debited on Thursdays by the Commission's central bank pursuant to the debtors signing of a pre-authorization form when they received the license. On or about November 8, 1994, the Commission received notice from its central bank indicating that insufficient funds were in the Bizzy Buzzy account for the week ending November 2, 1994. On November 9, 1994, the Commission sent a representative to conduct a field audit at Bizzy Buzzy. The Commission's representative determined that the debtors owed the Commission a total of $5,841.99 based on the failure by the debtors to either pay for or return certain lottery tickets. As a result, on November 14, 1994, the Commission revoked the debtors' license as a lottery sales agent.

On October 17, 1995, in a trial before this court, the evidence established in pertinent part that the debtors sold certain tickets; the lottery account did not have sufficient funds; and lottery tickets were received by the debtors but were not paid for or returned to the Commission. The court concluded that the debtors owe the Commission $5,841.99. The remaining issue, however, is whether the debt is nondischargeable under Bankruptcy Code section 523(a)(4).

## CONCLUSIONS OF LAW

■ The Commission's challenge to dischargeability is brought under section 523(a)(4) of the Bankruptcy Code, which provides:

(a) [a] discharge under section 727, 1141, 1228[a] 1228[b], or 1328(b) of this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. . . .

11 U.S.C. § 523(a)(4). The burden of proof in a section 523 action is on the party seeking relief. Fed.R.Bankr.P. 4005. To prove nondischargeability under § 523(a)(4), the Commission must establish that the debtors were acting in a fiduciary capacity, and that they committed an act of defalcation. *See In re Cowley*, 35 B.R. 526, 528–29 (Bankr.D.Kan. 1983).

## FIDUCIARY CAPACITY

■ The scope of the term "fiduciary" under § 523(a)(4) is a question of federal law. *Matter of Rausch*, 49 B.R. 562, 563 (Bankr. D.N.J.1985) (citing *Matter of Angelle*, 610 F.2d 1335, 1341 (5th Cir.1980)). Analysis of state law, however, is necessary to determine when the requisite trust relationship exists. *Matter of Angelle*, 610 F.2d at 1341; *In re Librandi*, 183 B.R. 379, 382 (M.D.Pa.1995). The traditional definition of "fiduciary," involving a relationship of confidence, trust and good faith, is too broad for the purposes of bankruptcy law. *Matter of Rausch*, 49 B.R. at 564 (citing *Chapman v. Forsyth*, 43 U.S. (2 How.) 202, 11 L.Ed. 236 (1844); *Upshur v. Briscoe*, 138 U.S. 365, 11 S.Ct. 313, 34 L.Ed. 931 (1891); *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934); *Matter of Angelle, supra*). Rather, the meaning of "fiduciary" for purposes of Bankruptcy Code section 523(a)(4) is limited to instances involving express or technical trusts. *Chapman v. Forsyth*, 43 U.S. (2 How.) at 207, 11 L.Ed. at 238; *Davis v. Aetna*, 293 U.S. at 333, 55 S.Ct. at 153–54. Moreover, the trustee's duties must be independent of any contractual obligation between the parties and must be imposed prior to, rather than by virtue of, any claim of misappropriation. *Davis v. Aetna*, 293 U.S. at 333, 55 S.Ct. at 154; *Upshur v. Briscoe*, 138 U.S. at 378, 11 S.Ct. at 317, 34 L.Ed. at 936. Accordingly, implied or constructive trusts and trusts ex maleficio are not deemed to impose fiduciary relationships under the Bankruptcy Code. *Matter of Angelle*, 610 F.2d at 1339. The reason for this narrow

interpretation is to promote the Bankruptcy Code's "fresh start" policy. *Id.*

There are different requirements that must be met to establish the existence of either an express or technical trust. To establish an express trust three elements must be met: (1) a declaration of trust; (2) a clearly defined trust res; and (3) an intent to create a trust relationship. *Librandi,* 183 B.R. at 382 (citations omitted). The definition and scope of a technical trust, however, is difficult to determine. *Id.* (citing *Quaif v. Johnson,* 4 F.3d 950, 953 (11th Cir.1993)). Some courts have determined that technical trusts for purposes of § 523(a)(4) can be created by state statutes. *Id.* (citing *Quaif,* 4 F.3d at 953; *Carey Lumber Co. v. Bell,* 615 F.2d 370, 374 (5th Cir.1980)). *See also In re Christian,* 172 B.R. 490, 495 (Bankr.D.Mass. 1994) (citations omitted) (noting that "courts have consistently considered state law relevant in determining whether a debtor was acting as a fiduciary under the Bankruptcy Code."). Other courts have found that state common law can create the requisite fiduciary relationship. *Id.* at 382–83 (citing *Matter of Marchiando,* 13 F.3d 1111, 1115 (7th Cir.), *cert. denied sub nom., Illinois Dep't of Lottery v. Marchiando,* — U.S. —, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994); *Matter of Bennett,* 989 F.2d 779, 784–85 (5th Cir.), *cert. denied sub nom., Bennett v. LSP Inv. Partnership,* — U.S. —, 114 S.Ct. 601, 126 L.Ed.2d 566 (1993)). Notwithstanding the differences in the means of establishing these two types of trusts, the scope of technical and express trusts is "not limited to trusts that arise by virtue of a formal trust agreement, but includes relationships in which trust-type obligations are imposed pursuant to statute or common law." *In re Librandi,* 183 B.R. at 382 (citing *Matter of Bennett,* 989 F.2d at 785)); *In re Bagel,* Civ.A. No. 92–11440F, 1992 WL 477052 at *12 (Bankr. E.D.Pa. Dec. 17, 1992), *aff'd without opinion,* 22 F.3d 300 (3d Cir.1994). *See also In re Johnson,* 174 B.R. 537, 541 (Bankr.W.D.Mo. 1994) ("[a]n express or technical trust must be either one in which a formal document is executed which establishes the rights and duties of the parties, or one in which trust-type obligations are imposed pursuant to statute or common law.").

The Commission contends that the debtors were fiduciaries for purposes of section 523(a)(4) because they were fiduciaries pursuant to a trust created by the New Jersey Rules of the Lottery Commission, N.J.Admin.Code tit. 17, § 20–6.1–6.3, promulgated under the authority of N.J.S.A. 5:9–7 (hereinafter "Rules" or "New Jersey Rules"). A statutory fiduciary under state law is only considered a fiduciary for purposes of section 523(a)(4) if the statute: (1) defines the trust res; (2) identifies the trustee's fund management duties and authority; and (3) imposes obligations on the trustee prior to the alleged wrongdoing. *In re Librandi,* 183 B.R. at 383 (citing *In re Christian,* 172 B.R. at 495; *In re Baird,* 114 B.R. 198, 202 (9th Cir. BAP 1990)). In addition, "[t]o show a fiduciary capacity arising from a statutorily created trust for the purposes of § 523(a)(4), a creditor must point to an express legislative design to create a trust relationship." *In re Christian,* 172 B.R. at 495 (citations omitted).

The cases analyzing statutory schemes for purposes of determining fiduciaries under section 523(a)(4) are in conflict. *See e.g., In re Librandi, supra* (Pennsylvania Securities Act did not impose fiduciary duties for purposes of nondischargeability); *In re Christian, supra* (Massachusetts statute requiring lessors to remit security deposits imposed fiduciary duties on lessors for purposes of § 523(a)(4)); *Quaif v. Johnson, supra* (Georgia statute imposed fiduciary duties upon debtor insurance agent); *In re Barrett,* 156 B.R. 529 (Bankr.N.D.Tex.1993) (Florida statute requiring insurance agent to hold premiums in trust created fiduciary relationship under § 523(a)(4)). More significantly, the cases addressing fiduciary duties in the context of state lottery statutes are also at odds with one another. *See Matter of Marchiando, supra; Decker v. Roes,* 32 B.R. 385 (D.N.J.1983); *Matter of Schusterman,* 108 B.R. 893 (Bankr.D.Conn.1989); *In re Cairone,* 12 B.R. 60 (Bankr.D.R.I.1981).

In *Matter of Marchiando,* the Seventh Circuit examined whether an Illinois state statute which provides that a licensed lottery ticket agent serves as a trustee of lottery proceeds, was prohibited from commingling

the proceeds, and was required to pay them over to the state, imposed a fiduciary duty on the ticket agent for purposes of determining nondischargeability. The debtor in the case failed to turn over the lottery sale proceeds to the Illinois Department of the Lottery. The court found that the Illinois statute did not impose a fiduciary relationship pursuant to § 523(a)(4). *Id.* at 1116. *See also Matter of Schusterman,* 108 B.R. at 895 (holding that Connecticut lottery statute did not impose fiduciary duties upon ticket agents merely because the wording of the statute spoke in terms of a trust relationship).

In contrast to the court's decision in *Marchiando,* the bankruptcy court in *Cairone* determined that Rhode Island's lottery statute imposed fiduciary obligations upon the debtors. *Id.* at 62–63. The statute provided that all lottery proceeds received by the licensed agents were held in trust and required that the agents segregate the proceeds and maintain them in separate accounts. The court found that the statute created fiduciary duties because it prescribed that the funds received were to be held in trust; the agents had trust-like duties in maintaining separate accounts; and the trust commenced prior to, rather than by virtue of, any defalcation. *Id.* at 62. *See also Decker v. Roes,* 32 B.R. at 386 (agreeing with the bankruptcy court's determination that funds received from the sale of lottery tickets in New Jersey are trust funds under the applicable rules of the Lottery Commission).

In the present case, the New Jersey Rules provide that the tickets received by the agent are held in trust:

(d) [t]he agent accepts all tickets in trust for the Lottery. Tickets in the hands of an agent are the agent's sole responsibility and it is the agent's sole duty as a fiduciary of the Lottery either to return the tickets to the Lottery within the specified time or to remit the face value of the tickets to the Lottery, minus any commissions, bonuses and reimbursements for redeemed tickets to which the agent is entitled.

N.J.ADMIN.CODE tit. 17, § 20–6.1(d) (1988). In addition, the Rules prescribe that the agent shall maintain segregated accounts for proceeds received from the sale of the tickets and provide periodic reports to the Commission:

17:20–6.3 Deposit of lottery moneys

(a) Agents shall remit their net lottery receipts to the bank on the dates specified by the lottery game in question. Notwithstanding the rules of any specific game to the contrary, the Director may, in his or her discretion, require the agent to fully account for any and all lottery tickets issued to him or her and to remit immediately all sums due the lottery.

(b) Moneys received by an agent from the sale of lottery tickets are the property of the lottery and are held by the agent in trust for the lottery. The agent shall immediately segregate all moneys received from the sale of lottery tickets, and shall hold such moneys in trust for the lottery in a bank account specifically designated as a New Jersey Lottery Account.

(c) Agent shall file with the Director or his or her designee reports of their receipts and transactions concerning the sale and redemption of lottery tickets in a form as prescribed by the respective game instructions.

(d) The agent shall be absolutely liable for payment of such moneys to the lottery notwithstanding the degree of care exercised with respect to such moneys by the agent.

(e) The agent shall keep current records of all operations in conformity with the State Lottery Law and this chapter, and such other instructions as may be issued by the Director....

N.J.ADMIN.CODE tit. 17, § 20–6.3(a)–(d) (1988).

■ At trial, the debtors asserted that the New Jersey Rules did not apply to them because the actual agent was JMark, Inc. The debtors argued that the New Jersey Rules define "machine agent" and "manual agent," but do not define the term "agent" which is referred to in N.J.ADMIN.CODE tit. 17, § 20–6.3(b), *supra.* That argument is without merit. The New Jersey Rules only

refer to either a machine agent or manual agent. Within the definitions of machine and manual agent, the New Jersey Rules provide that when an agent is a corporation, the officers of the corporation are also agents. N.J.ADMIN.CODE tit. 17, § 20–2.1 (1988).[1] In this case, the debtors were the principals of JMark, Inc. which applied for and received a license to function as both a machine and manual agent. As a result, the debtors were also agents within the meaning of the New Jersey Rules.

The debtors argue, however, that even if they were agents, no fiduciary relationship is created by the New Jersey Rules based on the Seventh Circuit's decision in *Marchiando*. The *Marchiando* court provided three reasons for determining that the Illinois lottery statute did not impose a fiduciary relationship on the debtors for purposes of § 523(a)(4). Initially, the court determined that the Illinois statute did not intend to impose a trust or fiduciary relationship until a wrong was committed:

> [t]echnically, Marchiando became a trustee as soon as she received her license to sell lottery tickets. Realistically, the trust did not begin until she failed to remit ticket receipts. For until then she had no duties of a fiduciary character toward the Department of Lottery or anything or anyone else. Until then, she was just a ticket agent. The state, afraid that she might be a disloyal agent, required her to keep the proceeds of her ticket sales separate from her other funds and threatened her with criminal punishment if she did not. These were devices by which the state sought to establish and enforce a lien on the proceeds, the better to collect them securely.

*Id.* at 1116.

The New Jersey Rules are only slightly different from the Illinois statutes at issue in *Marchiando*. The Illinois statutes provide that all sales proceeds and unsold instant tickets shall constitute a trust fund until paid to the department and forbid the commingling of these funds with other funds. ILL. ANN.STAT. ch. 20, para 1605/10.3 (Smith–Hurd 1995). In addition, the Illinois statutes require that the lottery sales agent provide a report of receipts and transactions with each payment or deposit of the trust funds. ILL. ANN.STAT. ch. 20, para 1605/21 (Smith–Hurd 1995). Based on these statutory provisions, the *Marchiando* court ruled that the fiduciary obligations of the ticket agent did not arise until after the debt was incurred. *Id.* at 1116.

In comparison, under the New Jersey Rules, the ticket agent's fiduciary duties arise at the moment the agent receives the tickets because the Rules provide that the agent "accepts all tickets in trust." N.J.ADMIN.CODE tit. 17, § 20–6.1(d) (1988). At that point, the agent is obligated to account for either the tickets or proceeds received from the sale of the tickets. In addition, the agent is obligated to maintain and provide current reports and records with respect to lottery transactions and operations and deposit sale proceeds in a segregated account. These duties were not imposed at the time the debtors failed to remit the ticket receipts. Rather, they were imposed at the time the debtors received the tickets from the Commission.

The second reason the *Marchiando* court provided was that fiduciary relationships under section 523(a)(4) exist only when there is either an express trust or an inequality of relation based on power or expertise, where one party is incapable of monitoring the other's performance of his undertaking. *Id.* at 1116. Although not expressly stated by the court, it appears that the latter situation creates a technical trust for purposes of section 523(a)(4). *See In re Librandi*, 183 B.R. at 383 (analyzing the *Marchiando* decision). This analysis, however, effectively precludes statutorily created trust relation-

---

1. The definition of a machine agent is "a person who has been licensed under the Act to sell lottery tickets and in addition has been authorized by the Director to sell certain tickets through a computer linked lottery machine." N.J.ADMIN.CODE tit. 17, § 20–2.1 (1988). The definition also provides that when a " 'person' is a corporation the term includes officers thereof." *Id.* The definition of manual agent is "a person who has been licensed under the Act to sell lottery tickets manually." *Id.* The definition also asserts that when a " 'person' is a corporation the term includes officers thereof." *Id.*

ships that do not involve unequal relations. The Supreme Court's decisions in *Chapman*, *Davis* and their progeny do not require such a limited definition of a trust relationship for purposes of § 523(a)(4), and courts have consistently held that trust-type obligations can arise pursuant to statutory or common law. *In re Quaif*, 4 F.3d at 954 (Georgia insurance code created fiduciary duties); *In re Kawczynski*, 442 F.Supp. 413 (W.D.N.Y.1977) (New York Lien Law which required contractor to keep detailed records and segregate funds, and made it a criminal offense to use advanced funds for a particular project for other purposes, imposed fiduciary duties on the contractor); *In re Petersen*, 51 B.R. 486 (Bankr.D.Kan.1985) (Federal Packers and Stockyards Act imposed fiduciary duties on owner of livestock auction). These cases hold that a trust exists for purposes of section 523(a)(4) notwithstanding the lack of an unequal relation based on power or expertise. Accordingly, to the extent that *Marchiando* limits fiduciary relationships to express trusts or trusts involving inequality of relations, this court disagrees with that decision. As previously noted, technical trusts also create a fiduciary relationship for purposes of section 523(a)(4).

■ Even if *Marchiando's* narrow definition of the term "fiduciary" is applied, however, the New Jersey Rules would still impose fiduciary obligations because they do create an express trust for purposes of section 523(a)(4). *See e.g., Carey Lumber Co. v. Bell*, 615 F.2d at 374 (Oklahoma lien trust statute created an express trust); *In re Barrett*, 156 B.R. at 533 (Florida insurance premium statute created an express trust for purposes of § 523(a)(4)). All the elements of an express trust are met: (1) the Commission's Rules expressly and clearly declare a trust relationship upon lottery ticket agents; (2) the Rules clearly define the trust res as the tickets and/or the proceeds from ticket sales; and (3) the Rules charge the trustee with the affirmative duties of recording, maintaining and applying trust funds.

■ The final reason provided by the *Marchiando* court for its decision is the potential danger of granting state legislatures unfettered discretion to declare certain con-

tractual relations with the state "fiduciary" for § 523(a)(4) purposes. *Id.* at 1116. The *Marchiando* court warned:

> [i]f . . . a fiduciary is anyone whom a state calls a fiduciary . . . states will have it in their power to deny a fresh start to their debtor by declaring all contractual relations fiduciary. . . . They are apt to seek a preferred position for their own debts by declaring people who do business with the state fiduciaries of the state or its agencies.

*Id.* However, this analysis ignores the basic tenet that merely mentioning the words "fiduciary" or "in trust" in a statute does not in itself create a fiduciary relationship. *See Matter of Schusterman*, 108 B.R. at 895. Moreover, *Marchiando's* concern can be displaced by recognizing statutorily created fiduciary relationships only where, as in this case, the statute imposes clearly delineated fiduciary duties which arise before any alleged defalcation. *See Matter of Angelle*, 610 F.2d at 1341 (finding that "[t]he state may impose trust-like obligations on those entering into certain kinds of contracts, and these obligations may make a contracting party a trustee.").

Based on the foregoing, this court respectfully disagrees with *Marchiando* and *Schusterman*, and follows *Cairone*. The court holds that the debtors in this case were fiduciaries under Code section 523(a)(4). The remaining issue to be decided is whether the debtors committed a defalcation.

## DEFALCATION

■ The term "defalcation" is not defined in the Code and there is no legislative comment or history to aid the interpretation. However, Judge Learned Hand in *Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510 (2d Cir.1937), provided an analysis of the term and concluded that "when a fiduciary takes money upon a conditional authority which may be revoked and knows at the time it may, he is guilty of a 'defalcation' though it may not be 'fraud,' or an 'embezzlement,' or perhaps not even a 'misappropriation.'" *Id.* at 511–12. Cases interpreting section 523(a)(4) have held that it is unnecessary to prove an intentional wrong by the

debtor where the debtor himself misappropriates the funds. *See In re Quaif*, 4 F.3d at 955; *In re Gonzales*, 22 B.R. 58 (9th Cir. BAP 1982); *In re Barrett*, 156 B.R. at 536; *In re Petersen*, 51 B.R. at 489. Accordingly, a defalcation occurs when a fiduciary fails to account for funds received in his fiduciary capacity. *In re Cairone*, 12 B.R. at 63.

In the present case, this court has determined that the debtors failed to remit tickets and/or proceeds in the amount of $5,841.99. The debtors were under a fiduciary duty to hold these funds in trust and failed to do so. Moreover, they offered no explanation as to what became of the funds and tickets in question. Accordingly, it must be concluded that the failure to remit the ticket proceeds to the Commission constituted a defalcation within the meaning of section 523(a)(4).

### CONCLUSION

Based on the foregoing, the court concludes that the debt owed to the Commission in the amount of $5,841.99 is nondischargeable under Bankruptcy Code section 523(a)(4). The attorney for the plaintiff shall therefore submit a judgment pursuant to ,Fed.R.Bankr.P. 9021 and D.N.J.Bankr.Ct.R. 4(c) within ten days.