In re Tonya Evelyn DANIEL, Debtor.

**GEORGIA LOTTERY CORPORATION,**
**Plaintiff,**

v.

**Tonya Evelyn DANIEL, Defendant.**

**Bankruptcy No. 97–78455.**
**Adversary No. 98–6041.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Sept. 22, 1998.

**250**

Oscar B. Fears, III, Attorney General's Office, Atlanta, GA, for plaintiff.

Ronnie K. Batchelor, Lawrenceville, GA, for defendant.

### ORDER

MARGARET H. MURPHY, Bankruptcy Judge.

Before the court is Plaintiff's motion for summary judgment. Plaintiff seeks a determination that its claim against Debtor is nondischargeable pursuant to 11 U.S.C. § 523(a)(4). Plaintiff asserts that its claim arose as a result of Debtor's defalcation while acting in a fiduciary capacity. Plaintiff contends Debtor's fiduciary duties arose under O.C.G.A. § 50–27–21(a), which creates a technical trust. Defendant opposes the motion for summary judgment on the grounds that the Georgia statute is insufficient to create the type of technical trust which falls within the § 523(a)(4) exception to dischargeability.

### STATEMENT OF FACTS

On April 19, 1996, Debtor entered into a contract with Plaintiff in which she agreed to be a retailer of Georgia lottery tickets.

1. The *Davis* case was decided under § 17(a)(4) of the Bankruptcy Act, which was transmuted virtually unchanged to § 523(a)(4).

2. Decisions of Unit B of the former Fifth Circuit are binding precedent in the Eleventh Circuit. Section 9, Public Law 96–452 (1980).

The contract was executed under O.C.G.A. § 50–27–1, *et seq.*, the Georgia Lottery for Education Act. In the contract, Debtor acknowledged her fiduciary duty to preserve and account for the proceeds from the sale of tickets and to maintain a separate bank account for the deposit of those proceeds. Prior to the filing of Debtor's bankruptcy petition, Debtor failed to remit to Plaintiff lottery ticket sales proceeds in the amount of $9,830.26.

In Debtor's response, she alleges that she deposited all proceeds from the sale of lottery tickets and that any deficit which exists results from stolen tickets or employee theft of funds. Debtor, however, presents no affidavit or other evidence to support that allegation.

### CONCLUSIONS OF LAW

Pursuant to 11 U.S.C. § 523(a)(4), a debt based on ""fraud or defalcation while acting in a fiduciary capacity" is nondischargeable. The U.S. Supreme Court has consistently interpreted "fiduciary" as used in § 523(a)(4) narrowly, holding that the trust upon which the fiduciary relationship relies must be an express or technical trust. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934).[1] The trust must have existed before and not as a result of the defalcation. *Id.; Quaif v. Johnson*, 4 F.3d 950 (11th Cir.1993); *Lewis v. Short*, 818 F.2d 693 (9th Cir.1987); *Murphy & Robinson Investment Co. v. Cross*, 666 F.2d 873 (5th Cir. Unit B 1982),[2] *Angelle v. Reed*, 610 F.2d 1335 (5th Cir.1980).[3]

The case of *Quaif v. Johnson*, 4 F.3d 950 (11th Cir.1993), concerned a Georgia statute which required an insurance agent to remit to the insurer premiums it had collected on behalf of the insurer. The Eleventh Circuit Court of Appeals affirmed the determinations of the district and bankruptcy courts that the statute created a technical trust and that the agent's failure to remit the premi-

3. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981), renders decisions of the Fifth Circuit issued prior to September 30, 1981, binding precedent for the Eleventh Circuit.

ums constituted defalcation while acting in a fiduciary capacity. In *Quaif,* the Court found that the Georgia statute created the trust before and not as a result of the defalcation. The court noted that the Georgia insurance statute created trust-like duties to account for and remit proceeds and to refrain from commingling the proceeds with the agent's operating or personal accounts. The Georgia insurance statute did not require a separate account for premiums but the *Quaif* court found that a separate account, while indicative of a trust, is not a *sine qua non* for the creation of a technical trust.

Plaintiff also relies upon the holding in *State of New Jersey v. Kaczynski,* 188 B.R. 770 (Bankr.D.N.J.1995). The facts in that case are very similar to the facts in the instant case. The debtors in that case were principals of a lottery licensee. The state's rules for lottery licensees required the debtors to deposit the daily proceeds in a segregated bank account. The funds were then electronically debited in accordance with the debtors' contract with the state lottery commission. Upon one such debit attempt, the commission was notified of an insufficiency of funds in the account and following an audit, determined a deficiency of approximately $6,000.

The court in *Kaczynski,* citing *Quaif,* listed the four elements of a technical trust created by statute. The statute must (1) define the trust *res;* (2) identify the fiduciary's fund management duties and authority; (3) impose duties upon the fiduciary prior to any wrongdoing; and (4) express a legislative design to create a trust. *See also, In re Cairone,* 12 B.R. 60 (Bankr.D.R.I.1981).

The relevant Georgia statute provides:

**50–27–21 Preservation of lottery proceeds by retailers; accounting procedures; preference accorded proceeds of insolvent retailers.**

(a) All proceeds from the sale of the lottery tickets or shares shall constitute a trust fund until paid to the corporation either directly or through the corporation's authorized collection representative. A lottery retailer and officers of a lottery retailer's business shall have a fiduciary duty to preserve and account for lottery proceeds and lottery retailers shall be personally liable for all proceeds. Proceeds shall include unsold instant tickets received by a lottery retailer and cash proceeds of the sale of any lottery products, net of allowable sales commissions and credit for lottery prizes sold to or paid to winners by lottery retailers. Sales proceeds and unused instant tickets shall be delivered to the corporation or its authorized collection representative upon demand.

(b) The corporation shall require retailers to place all lottery proceeds due the corporation in accounts in institutions insured by the Federal Deposit Insurance Corporation not later than the close of the next banking day after the date of their collection by the retailer until the date they are paid over to the corporation. At the time of such deposit, lottery proceeds shall be deemed to be the property of the corporation. The corporation may require a retailer to establish a single separate electronic funds transfer account where available for the purpose of receiving moneys from ticket or share sales, making payments to the corporation, and receiving payments for the corporation. Unless otherwise authorized in writing by the corporation, each lottery retailer shall establish a separate bank account for lottery proceeds which shall be kept separate and apart from all other funds and assets and shall not be commingled with any other funds or assets.

(c) Whenever any person who receives proceeds from the sale of lottery tickets or shares in the capacity of a lottery retailer becomes insolvent or dies insolvent, the proceeds due the corporation from such person or his estate shall have preference over all debts or demands.

O.C.G.A. § 50–27–21 sets forth all the elements of a technical trust. The trust *res* is identified. A lottery retailer must preserve and account for the *res* and must maintain

the lottery proceeds in a separate account. The retailer may deduct from the gross proceeds a commission and cash prizes paid to winners. In the instant case, Debtor maintained a separate account but when the account was accessed by the Georgia Lottery Corporation, the fund was deficient. Debtor provided no evidence to explain the deficiency. Therefore, the evidence presented by Plaintiff supports a conclusion that Debtor's actions constitute defalcation.

Debtor cites the case of *In re Marchiando*, 13 F.3d 1111 (7th Cir.) *cert. den.*, 512 U.S. 1205, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994), in which the court concludes that a lottery statute does not create a technical trust which would fall within the § 523(a)(4) exception to dischargeability. Other courts have similarly held. *In re Schusterman*, 108 B.R. 893 (Bankr.D.Conn.1989); *Texas Lottery Commission v. Tran*, 151 F.3d 339 (5th Cir.1998). Those cases rely upon a conclusion that a trust relationship should involve a fiduciary who holds ascendancy over the beneficiary by reason of the fiduciary's professional status, greater knowledge, special confidence or greater power (as when the beneficiary is a minor). Such a conclusion, however, is not supported by Eleventh Circuit precedent in *Quaif*,[4] and, therefore, the reasoning of those cases is unpersuasive. Accordingly, it is hereby

ORDERED that Plaintiff's motion for summary judgment is granted.

---

**4.** *See also* the strong dissent in *Texas Lottery Commission v. Tran*, 151 F.3d 339 (5th Cir.1998), which notes that the holding in *Marchiando* conflicts with Fifth Circuit precedent.