In the Matter of Robert Keith
THOMPSON, Debtor.

**Georgia Lottery Corporation, Plaintiff,**

**v.**

**Robert Keith Thompson, Defendant.**

**Bankruptcy No. 02–54184 RFH.
Adversary No. 02–5165.**

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

Aug. 1, 2003.

Bryndis W. Roberts, Jenkins & Roberts LLC, Atlanta, GA, for Plaintiff.

Don E. Snow, Thomaston, GA, for Defendant.

## MEMORANDUM OPINION

ROBERT F. HERSHNER, Jr., Chief Judge.

The Georgia Lottery Corporation, Plaintiff, filed on May 15, 2003, its motion for summary judgment. Robert Keith Thompson, Defendant, filed a response on June 9, 2003. The Court, having considered Plaintiff's motion, the response, the record, and the arguments of counsel, now publishes this memorandum opinion.

Defendant and Larry Dunn owned a small store known as The Outpost. (hereafter "Defendant's business").[1] Defendant and his wife operated the business.

Plaintiff is a corporation that operates a state lottery pursuant to the Georgia Lottery for Education Act. *See* O.C.G.A. § 50–27–1 (2002).

Plaintiff and Defendant entered into a Retailer Contract dated October 6, 2000.[2] Defendant agreed to sell lottery tickets at his business. Pursuant to the contract, Plaintiff delivered packs of lottery tickets to Defendant's business. Defendant electronically confirmed receipt of the lottery tickets. When the tickets were needed for sale to the public, Defendant electronically activated the pack of lottery tickets. Defendant was to deposit, on a daily basis, the sales proceeds into a separate bank account in the name of "the Retailer as 'Trustee for the Georgia Lottery Corporation.'" Plaintiff electronically swept its share of the sales proceeds from the bank account some twenty-one days after Defendant activated the pack of lottery tickets.[3]

Defendant closed his business on September 22, 2001. Defendant filed a petition for relief under Chapter 7 of the Bankruptcy Code on September 19, 2002.

Plaintiff contends that Defendant failed to deposit certain proceeds from the sale of lottery tickets into the separate bank account. Plaintiff filed on October 23, 2002, a complaint contending that Defendant's failure to remit lottery proceeds is a "defalcation while acting in a fiduciary capacity." Plaintiff relies upon section 523(a)(4) of the Bankruptcy Code[4] which provides:

§ 523. **Exceptions to discharge**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual from any debt-

. . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

---

1. Defendant and Mr. Dunn were partners in the business.

2. Defendant's business, The Outpost, was the "Retailer" under the Retailer Contract. Defendant signed the Retailers Contract on behalf of The Outpost. Defendant does not dispute that he would have personal liability for the obligations at issue. Answer to Complaint to Determine the Dischargeability of Debt, para. 4 (filed Nov. 18, 2002). *See* O.C.G.A. § 50–27–21(a) (2002).

3. Defendant notes that Plaintiff swept the bank account whether or not Defendant had sold the lottery tickets to the public.

4. 11 U.S.C.A. § 523(a)(4) (West 1993 and Supp.2003).

Plaintiff and Defendant disagree as to whether the failure to remit lottery proceeds is a "defalcation while acting in a fiduciary capacity."

The Retailer Contract provides in part;

5. *Electronic Funds Transfer.* Retailer shall have a fiduciary duty to preserve and account for all proceeds from the sale of lottery Tickets collected by it and shall be responsible and liable for all such proceeds. All proceeds from the sale of lottery Tickets and all other funds due the GLC shall constitute a trust fund in favor of the GLC until paid to the GLC. Subject to the Act and the Rules and Regulation, Retailer agrees: (i) to maintain for the purpose of this Retailer Contract a separate bank account in the name of Retailer as "Trustee for the Georgia Lottery Corporation", with a bank acceptable to GLC which is a member of an automated clearing house association; (ii) to deposit daily into that bank account all proceeds from the sale of lottery Tickets and other funds due the GLC; (iii) to authorize GLC to initiate Electronic Funds Transfer (EFT) to and from that account for the net settlement due from the sales of GLC lottery Tickets; and (iv) that sufficient funds shall be available in the designated account on the dates specified by GLC to cover the amounts due GLC, as determined by GLC.

The Georgia Lottery for Education Act provides, in part;

**50–27–21. Preservation of lottery proceeds by retailers; accounting procedures; preference accorded proceeds of insolvent retailers.**

(a) All proceeds from the sale of the lottery tickets or shares shall constitute a trust fund until paid to the corporation either directly or through the corporation's authorized collection representative. A lottery retailer and officers of a lottery retailer's business shall have a fiduciary duty to preserve and account for lottery proceeds and lottery retailers shall be personally liable for all proceeds. Proceeds shall include unsold instant tickets received by a lottery retailer and cash proceeds of the sale of any lottery products, net of allowable sales commissions and credit for lottery prizes sold to or paid to winners by lottery retailers. Sales proceeds and unused instant tickets shall be delivered to the corporation or its authorized collection representative upon demand.

(b) The corporation shall require retailers to place all lottery proceeds due the corporation in accounts in institutions insured by the Federal Deposit Insurance Corporation not later then the close of the next banking day after the date of their collection by the retailer until the date they are paid over to the corporation. At the time of such deposit, lottery proceeds shall be deemed to be the property of the corporation. The corporation may require a retailer to establish a single separate electronic funds transfer account where available for the purpose of receiving moneys from ticket or share sales, making payments to the corporation, and receiving payments through the corporation. Unless otherwise authorized in writing by the corporation, each lottery retailer shall establish a separate bank account for lottery proceeds which shall be kept separate and apart from all other funds and assets and shall not be commingled with any other funds or assets.

O.C.G.A. § 50–27–21(a), (b) (2002)

In *Quaif v. Johnson*[5], the debtor, a licensed insurance agent, failed to remit insurance premiums which he collected on behalf of an insurance company. The Eleventh Circuit Court of Appeals affirmed the decision of the district court which held that the debtor was acting in a fiduciary capacity when he acquired the premiums, and that the debtor had committed a defalcation by failing to remit the premiums to the insurance company. The district court noted that Georgia law requires that the premiums must be separate from other funds and that this segregation is sufficient to satisfy the requirement that the fiduciary duties be created prior to the act of defalcation. The district court stated that defalcation refers to a failure to produce funds entrusted to a fiduciary, even though the failure may not arise to the level of fraud, embezzlement, or even misappropriation. 4 F.3d at 954–55.

■ The Retailer Contract and The Georgia Lottery for Education Act require that lottery proceeds be kept separate from other funds. Lottery proceeds are trust funds which are the property of the Georgia Lottery Corporation. The lottery retailer and its officers have a fiduciary duty to preserve and account for lottery proceeds. *See Suwannee Swifty Stores, Inc. v. Georgia Lottery Corp. (In re Suwannee Swifty Stores, Inc.)*, 266 B.R. 544, 549–50 (Bankr.M.D.Ga.2001)(Laney, J.), aff'd Case No. 6:01–CV–53 (CDL) (M.D. Ga. June 3, 2002), aff'd Table No. 02–13732, 67 Fed.Appx. 583 (11th Cir. April 28, 2003) (Georgia lottery statutes create a statutory trust in favor of the Georgia Lottery Corporation).

The Court has considered two decisions by the United States Bankruptcy Court for the Northern District of Georgia. *Georgia Lottery Corp. v. Daniel (In re Daniel)* 225 B.R. 249 (Bankr.N.D.Ga.1998) (Murphy, J.); *Georgia Lottery Corp. vs Finley (In re Finley)* Ch. 7, Case No. A 97–75294—ADK, Adv. No. 97–6684 (Bankr.N.D.Ga. Oct. 21, 1998) (Kahn, J.). The bankruptcy court in *Daniel* and *Finley* applied the holdings of *Quaif* to the requirements of the Georgia lottery statute and held that the debtors committed a defalcation when acting in a fiduciary capacity by failing to remit lottery proceeds to the Georgia Lottery Corporation.

The Court is persuaded by the reasoning in *Daniel* and *Finley* and holds that the failure to remit lottery proceeds satisfies the "defalcation while acting in a fiduciary capacity" requirements of section 523(a)(4). There being no questions of material fact, Plaintiff's motion for summary judgment on this issue will be granted.

Plaintiff contends that Defendant failed to remit $6,275.44 of lottery proceeds. Defendant, in his affidavit, testified that he put all lottery proceeds into the separate bank account and turned over all unsold tickets to Plaintiff's representative.

■ The Court is persuaded that there are questions of material fact as to the amount, if any, of lottery proceeds that Defendant failed to remit to Plaintiff. Accordingly, Plaintiff's motion for summary judgment will be denied on the issue of damages.

An order in accordance with this memorandum opinion will be entered this date.

---

5. 4 F.3d 950 (11th Cir.1993)