In re Saeed KHALIF, Debtor.

**Gregory Smith, M.D. and Dominique Smith, M.D., Plaintiffs,**

**v.**

**Saeed Khalif, Defendant.**

**Bankruptcy No. 03–92269.**
**Adversary No. 03–9296.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

April 26, 2004.

Monica R. Owens, Jay Michael Barber, Decker, Hallman, Barber & Briggs, PC, Atlanta, GA, for Plaintiffs.

### ORDER DENYING MOTION FOR DEFAULT JUDGMENT

JAMES E. MASSEY, Bankruptcy Judge.

In this adversary proceeding, Plaintiffs Gregory Smith and Dominique Smith seek a judgment declaring that a debt allegedly owed to them by Defendant and Debtor Saeed Khalif is not dischargeable. Defendant has not filed an answer or other response with the Court, as indicated by the Clerk's entry of default made on November 20, 2003, and Plaintiffs move for the entry of a default judgment.

Rule 7012(a) of the Federal Rules of Bankruptcy Procedure provides that "[i]f a complaint is duly served, the defendant shall serve an answer within 30 days after the issuance of the summons." Rule 5(d) of the Federal Rules of Civil Procedure, made applicable by Fed. R. Bank. P. 7005, requires a litigant to file any pleading subsequent to the complaint "within a reasonable time after service." Rule 55(a) of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 7055, provides that "[w]hen a party against whom a judgment for affirmative relief is sought

has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Rule 55(b) describes the circumstances in which "judgment by default may be entered" by the Clerk or the Court.

■ "Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading." Fed.R.Civ.P. 8(c), made applicable by Fed. R. Bankr.P. 7008. Hence, a defendant that willfully fails to respond to a complaint is deemed to admit the well-pleaded allegations concerning liability. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155 (2nd Cir.1992). "The [defaulting] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975).

■ "The decision to enter judgment by default rests in the court's sound discretion. *Dennis Garberg & Assocs., Inc. v. Pack–Tech Int'l Corp.,* 115 F.3d 767, 771 (10th Cir.1997) (citing *Ruplinger v. Rains,* 946 F.2d 731, 732 (10th Cir.1991))." *Busey v. Board of County Com'rs of County of Shawnee, Kansas* 163 F.Supp.2d 1291, 1297 (D.Kan.2001). "Default judgments are not generally favored and any doubt in entering or setting aside a default judgment must be resolved in favor of the defaulting party." *Finch v. Big Chief Drilling Co.,* 56 F.R.D. 456, 458 (E.D.Tex. 1972).

■ The first question presented by Plaintiffs' motion for a default judgment is whether they "duly served" the summons and complaint on Defendant. If not, the Court would lack in personam jurisdiction over Defendant to grant the relief demanded. *In re Brackett,* 243 B.R. 910, 913 (Bankr.N.D.Ga.2000).

Bankruptcy Rule 7004(b)(9) specifically provides the method for service by mail on a debtor as follows:

b) Service by First Class Mail.

Except as provided in subdivision (h), in addition to the methods of service authorized by Rule 4(e)-(j) F.R.Civ.P., service may be made within the United States by first class mail postage prepaid as follows:

[ . . . ]

(9) Upon the debtor, after a petition has been filed by or served upon the debtor and until the case is dismissed or closed, by mailing a copy of the summons and complaint to the debtor at the address shown in the petition or statement of affairs or to such other address as the debtor may designate in a filed writing and, if the debtor is represented by an attorney, to the attorney at the attorney's post-office address.

Plaintiffs filed a certificate of service executed by their attorney, Monica R. Owens, in which she stated that on September 25, 2003 she served Defendant by mailing a copy of the summons and complaint to him at 4282 Memorial Drive, Suite D, Decatur, Georgia 30032 and by properly mailing a copy to Defendant's attorney, Divida Gude, at her address shown in the Defendant's bankruptcy petition.

The street and mailing address of Defendant shown in his petition was 3480 Donegal Way, Lithonia, Georgia. Unfortunately for Plaintiffs, the Memorial Drive address was not "the address shown in the . . . statement of affairs." As explained in detail below, the reference in Rule 7004(b)(9) to "the address in the . . . statement of affairs" is to the debtor's response to a question about a debtor's current ad-

dress in abrogated official forms. Consequently, the service by mail on Defendant described in the certificate of service filed by Plaintiffs' counsel did not and could not satisfy Bankruptcy Rule 7004(b)(9).

The text of Bankruptcy Rule 7004(b)(9) is taken from the similar text of old Bankruptcy Rule 704(c)(9) in effect under the old Bankruptcy Act, which also contained a provision permitting service by mail on a bankrupt "at the address shown in the petition or statement of affairs." 11 U.S.C. app.-Bankruptcy Rule 704(c)(9) (1976). The form of the voluntary petition used to commence a bankruptcy case under the Bankruptcy Act required a bankrupt to state a "post-office address." 11 U.S.C. app.-Official Bankruptcy Form 1 (1976). Under the old Bankruptcy Rules, there were two versions of the statement of affairs, depending on whether the bankrupt was engaged in business. Question 1(c) of the Statement of Affairs for Bankrupt Not Engaged in Business asked: "Where do you now reside?" 11 U.S.C. app.-Official Bankruptcy Form 7 (1976). Question 1(a) of the Statement of Affairs for Bankrupt Engaged in Business asked: "Under what name and where do you carry on your business?" 11 U.S.C. app.-Official Bankruptcy Form 8 (1976).

The Bankruptcy Act was repealed, and on October 1, 1979 the Bankruptcy Code became effective. 11 U.S.C. § 101 et seq. (1976 ed., Supp. IV). The Federal Rules of Bankruptcy Procedure, including official forms, became effective on August 1, 1983. The revised Official Form 1, the voluntary petition, referred to a "debtor" instead of a "bankrupt," but the requirement to provide a "post-office address" remained the same. 11 U.S.C. app.-Official Form 1 (1982 & Supp. I 1984). The titles of Official Forms 7 and 8 were amended to add the word "financial" before the word "affairs," but question 1(c) in Form 7 and

question 1(a) in Form 8 remained the same. 11 U.S.C. app.-Official Forms 7 and 8 (1982 & Supp. I 1984).

Official Forms 1, 7 and 8, among others, were significantly amended as of August 1, 1991. Revised Official Form 1 was amended to require the debtor's "street address" and a mailing address if different from the debtor's street address. 11 U.S.C. app.-Official Form 1, (1988 ed., Supp. III). Among other changes, the revised Official Form 7 became the only form for the statement of financial affairs, thereby eliminating a distinction based on whether the debtor was engaged in business, and it omitted the questions in the abrogated Forms 7 and 8 about the debtor's current residence and business addresses. 11 U.S.C. app.-Official Form 7, (1988 ed., Supp. III). (A new form, Chapter 7 Individual Debtor's Statement of Intention, was designated as Official Form 8. 11 U.S.C. app.-Official Form 8 (1988 ed., Supp. III)).

Defendant mentioned the Memorial Drive address in response to a question on his Statement of Financial Affairs about businesses in which he was "an officer, director, partner, or managing executive of a corporation, partnership, sole proprietorship or was a self-employed professional within the two years preceding the commencement of the case. . . ." The possible coincidence that he used the Memorial Drive address at the time of service is irrelevant with respect to service pursuant to Bankruptcy Rule 7004(b)(9). A prepetition address mentioned in a debtor's statement of financial affairs, even if valid postpetition, is not "the address shown in the . . . statement of affairs" to which that Rule refers. Hence, service of the summons and complaint on Defendant at the Memorial Drive address could not have complied with Bankruptcy Rule 7004(b)(9), even if he maintained a place of abode or

regularly conducted his business at that address on and shortly after September 25, 2003.

Bankruptcy Rule 7004(b)(1) permits service on "an individual other than a minor or incompetent, by mailing a copy of the summons and complaint to the individual's dwelling house or usual place of abode or to the place where the individual regularly conducts a business or profession." Courts have given inconsistent answers to the question of whether a debtor may be served pursuant to Rule 7004(b)(1) instead of, or in addition to, Rule 7004(b)(9). Compare *U.S. Escrow v. Bloomingdale (In re Bloomingdale)*, 137 B.R. 351 (Bankr. C.D.Cal.1991) with *Ingerman v. Shapiro (In re Shapiro)*, 265 B.R. 373 (Bankr. E.D.N.Y.2001) and *Union Trust Co. v. Anderson (In re Anderson)*, 179 B.R. 401, 408 (Bankr.D.Conn.1995). The Court does not presently reach this question because the record contains no evidence that the Memorial Drive address was Defendant's dwelling house or usual place of abode or the place where he regularly conducted a business or profession at the time the envelope containing those documents would have been delivered.

The problems facing Plaintiffs do not end with the issue of service. The complaint is also deficient in important respects. Understanding the defects requires a statement of the facts alleged in the complaint.

The complaint properly alleged the following facts. Defendant was Plaintiffs' tax preparer and personal accountant. On June 1, 2002, Plaintiffs loaned $25,000 to Defendant, and Defendant signed a promissory note promising to pay Plaintiffs $31,250 on October 1, 2002. The promissory note provided that in the event of a default, Defendant would owe, after a five-day grace period, a "late charge of 2% per day of the entire overdue amount until payment in full is received," additional interest on the unpaid balance at the rate of 5% per month and attorney's fees in the amount of 20% of the unpaid balance.

Defendant also executed a security agreement in which he granted Plaintiffs a security interest in "all personal investment accounts with Charles Schwab, Fidelity Investments, TD Waterhouse and Fairbanks Capital Corp." The security agreement further provided that in the event of a default, Defendant would pay "a sum equal to thirty percent (30%) of the outstanding unpaid amount of the Debtor's account and previously incurred costs for the collection of that as and for a reasonable attorney's fee."

Debtor made a false representation to Plaintiffs that he would repay them the sum of $31,250.00 on or before October 1, 2002 in accordance with the terms of the note. Debtor made the false representation with the intent of deceiving Plaintiffs to induce them to lend him $25,000.00. Debtor did not inform Plaintiffs on June 1, 2002 that he intended to file bankruptcy.

On June 3, 2002, Defendant filed a Chapter 13 case under case number 02–95793. He was represented by counsel. His Schedules did not mention the debt owed to Plaintiffs, list Plaintiffs as creditors, or include the property mentioned in the security agreement. While that case was pending, the note between Plaintiffs and Defendant became due. Unaware of Defendant's bankruptcy, Plaintiffs demanded payment of the note from Defendant and received a check in the amount of $31,250 dated November 6, 2002. This check was returned by Defendant's bank for insufficient funds. On December 18, 2002, this Court dismissed Defendant's Chapter 13 case for failure to remit payments to the trustee, and that case was closed on January 22, 2003.

On February 28, 2003, Defendant filed the present bankruptcy case. Again, Defendant's Schedules did not mention the debt owed to Plaintiffs, list Plaintiffs as creditors or include the property mentioned in the security agreement. On March 27, 2003, unaware of the new bankruptcy petition, Plaintiffs filed suit against Defendant in the State Court of DeKalb County, Georgia to collect on the note. When Plaintiffs served Defendant with the State Court complaint, Defendant informed Plaintiffs of the pending bankruptcy case.

Plaintiffs' complaint contains seven counts, numbered I, II, III, IV, VI, VII and VIII. There is no count V. The Court will discuss each count, beginning with the ones that fail to state a claim for relief.

■ In count II, entitled "Replevin— Recovery of Collateral," Plaintiffs seek a judgment directing Defendant to turn over collateral allegedly securing Plaintiffs' claim. All property in which Defendant had an interest on the petition date, however, became property of the estate under section 541 of the Bankruptcy Code. The Court takes judicial notice that the Chapter 7 Trustee has not abandoned any estate property and that Defendant did not exempt in his Schedule C any property described in the security agreement with Plaintiffs. Therefore, property in which Defendant had an interest on the petition date, excluding exempted property but including property securing Plaintiffs' claim, remains property of the estate. Debtor lacks the authority to turn over estate property even if it is still in his possession. The representative of the estate is the Chapter 7 Trustee, who is an indispensable party in an action seeking a turn-over of property of the estate, but Plaintiffs did not name the Trustee as a defendant. Hence, count II fails to state a claim on which relief can be granted. It should be noted that Plaintiffs also failed to show that they perfected a security interest in the collateral described in the security agreement. If the collateral exists and Plaintiffs failed to perfect their security interest, that unperfected lien will be voidable by the Trustee under section 544 of the Bankruptcy Code.

■ In count III, Plaintiffs assert that a fiduciary duty existed between the parties because Defendant was their accountant and tax advisor. They allege that Defendant breached a fiduciary duty to them by defaulting on the note and bouncing a check and that they are entitled to damages in an amount to be determined at trial. In count VIII, Plaintiffs reassert that Defendant breached a fiduciary duty as alleged in count III. In this count they assert that the debt for the alleged breach of a fiduciary duty is not dischargeable, but they do not refer to any section of the Bankruptcy Code. (In count VIII, Plaintiffs also repeat the contention that they were defrauded as alleged in count IV.) Counts III and VIII must be read together because the Court cannot grant relief on the claim for money damages in count III unless the debt sued on in count III is not dischargeable.

The only section of the Bankruptcy Code applicable to Plaintiffs' contention that Defendant committed fraud while acting as a fiduciary, thereby rendering the debt owed to Plaintiffs nondischargeable, is section 523(a)(4). It provides that a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" is excepted from the general discharge granted under section 727. If Plaintiffs thought they were stating a claim for relief under section 523(a)(4) in counts III and VIII, they are mistaken.

■ The meaning of the word "fiduciary" in section 523(a)(4) is a question of

federal law. *See Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934). "The Supreme Court has consistently held that the term 'fiduciary' is not to be construed expansively, but instead is intended to refer to 'technical' trusts." *Quaif v. Johnson*, 4 F.3d 950, 953 (11th Cir.1993) (citations omitted). A technical trust includes "a voluntary trust, created by contract, often referred to as an 'express' trust." *Id.* "For a debt to be non-dischargeable under 11 U.S.C. § 523(a)(4), the bankruptcy court must find that the debtor acted as a fiduciary and that in the course of performing his fiduciary duties, he committed an act of fraud or defalcation." *Eavenson v. Ramey*, 243 B.R. 160, 164–165 (N.D.Ga.1999).

 Even if Defendant owed some kind of fiduciary duty to Plaintiffs with respect to his services as their accountant, that duty would have no application to a loan transaction unrelated to his accounting services. Plaintiffs do not allege the existence of a technical or express trust as to which Defendant owed Plaintiffs a fiduciary duty. Nor do they show any connection between the alleged fraud and the conduct of Defendant as a fiduciary. Under the holding of the *Davis* case, "the trust relationship [must] have existed prior to the act which created the debt in order to fall within the statutory exception." *Quaif*, 4 F.3d at 953. In other words, section 523(a)(4) is inapplicable to a trust created as result of fraud that gives rise to the debt. Hence, counts III and VIII fail to state a claim upon which relief can be granted.

 In count VI of the complaint, entitled "Attorney's Fees," Plaintiffs seek attorney's fees pursuant to the note equal to "20% of the total amount due as a result of having to bring the instant action to collect upon the unpaid debt owed by Debtor" and pursuant to the security

agreement equal to "30% of the outstanding unpaid amount of the Debtor's account and previously incurred costs of collection." Under Georgia law, a contractual obligation to pay attorney's fees is governed by O.C.G.A. § 13–1–11. That section provides in part that an obligation in a note or other evidence of indebtedness for payment of attorney's fees is "enforceable up to but not in excess of 15 percent of the principal and interest owing on said note or other evidence of indebtedness," so long as the party seeking attorney's fees complies with the balance of that statute. The security agreement constitutes an "evidence of indebtedness" within the meaning of the statute because the "outstanding unpaid amount of the Debtor's account" on which attorney's fees are to be computed is nothing more than a cross-reference to the amount due under the note.

This provision is enforceable so long as: (1) the note's terms include an obligation to pay attorney fees; (2) the debt owed under the note has matured; (3) notice was given to the debtor informing him that if he pays the debt within ten days of the notice's receipt, he may avoid attorney fees; (4) the ten day period has expired without payment of the principal and interest in full; and (5) the debt is collected by or through an attorney. As stated in the Code section quoted above, once these conditions are established, contractual provisions to pay attorney fees in connection with a creditor's efforts to collect on a note "shall be valid and enforceable."

*Termnet Merchant Services, Inc. v. Phillips*, 277 Ga. 342, 344, 588 S.E.2d 745, 747 (2003). The complaint here fails to allege that Plaintiffs gave Defendant proper notice of their intent to collect attorney's fees of up to fifteen percent of principal and interest owing and that any such notice informed Defendant that he would avoid

having to pay attorney's fees by paying the principal and interest owed. Hence, count VI fails to state a claim upon which relief can be granted.

 In count VII of the complaint, entitled "Voluntary Petition For Bankruptcy," Plaintiffs allege that in his prior Chapter 13 case, Defendant engaged in "fraudulent conduct" and acted in bad faith by agreeing to execute a reaffirmation agreement and then refusing to do so. Section 524 of the Bankruptcy Code sets out the ground rules for entering into reaffirmation agreements. It provides in relevant part:

> (c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if—

> > (2)(A) such agreement contains a clear and conspicuous statement which advises the debtor that the agreement may be rescinded at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim; and

> > (B) such agreement contains a clear and conspicuous statement which advises the debtor that such agreement is not required under this title, under nonbankruptcy law, or under any agreement not in accordance with the provisions of this subsection[.]

It does not take a law degree to understand this language. Because a debtor can legally rescind an executed reaffirmation agreement within 60 days of signing it, it is frivolous to contend that a debtor's refusal to honor an unenforceable oral agreement to reaffirm a debt constitutes a fraudulent act or bad faith, giving rise to a claim for damages. This count also fails to state a claim upon which relief can be granted.

 The remaining two counts I and IV read together state claims for relief at least in part. In count I, Plaintiffs seek a judgment for the "sums due in accordance with the terms of the Promissory Note, including principal, interest, late charges and attorney's fees." Complaint, ¶ 14. "[A]ll circuit courts that have addressed the issue [of whether a bankruptcy court may enter a money judgment in a dischargeability proceeding] have concluded that bankruptcy courts do have jurisdiction to enter money judgments." *In re Lang*, 293 B.R. 501, 516–517 (10th Cir. BAP 2003) (citing cases from the 2nd, 6th, 7th and 9th Circuit Courts of Appeal; footnote omitted). In count IV, Plaintiffs allege that the debt owed by Defendant arises from fraud, that they are entitled to a judgment declaring the debt to be nondischargeable and that the amount of debt should be determined at trial.

In their brief in support of their motion for a default judgment, they ask the Court to enter a judgment for $31,537.98, which includes principal of $21,250, interest of $2,520, expenses of $397.48 and attorney's fees of $7,370.50. According to exhibit D attached to their brief, Plaintiffs computed interest at the rate of 5 % per month, which is the default rate stated in the note. The motion and brief do not state the total amount paid by Defendant to Plaintiffs on the debt, but the disclosure that the principal amount of the debt is presently $21,250 must mean that Defendant repaid at least $3,750, perhaps $10,000 and possibly more.

 The amount of nondischargeable debt under section 523(a)(2)(A) is not limited to the value of money or property received by the debtor. *Cohen v. de la Cruz*, 523 U.S. 213, 218, 118 S.Ct. 1212, 140

L.Ed.2d 341 (1998) ("The most straightforward reading of § 523(a)(2)(A)" is that it prevents discharge of "any debt" respecting "money, property, services, or ... credit" that the debtor has fraudulently obtained...."). Hence, Plaintiffs are entitled to relief on count I to the extent of Defendant's liability to repay a contractual debt that is also a debt respecting money fraudulently obtained by Defendant.

■ The debt at issue is less than Plaintiffs imagine. The portion of count I seeking attorney's fees fails to state a claim for relief to the extent that the claim is based on the attorney's fees provisions in the note for the reason given above in the discussion of count VI. Plaintiffs would be entitled to an award of reasonable attorney's fees under O.C.G.A. § 13–6–11, if they can prove fraud. *See Cary v. Guiragossian*, 270 Ga. 192, 508 S.E.2d 403 (1998). The demand for interest and late charges in count I is without merit because the note is usurious, as discussed below. Hence, any payment made by Defendant that Plaintiffs applied to interest must be reallocated to principal.

In Georgia, usury is a crime. O.C.G.A. § 7–4–18(a) provides in relevant part:

(a) Any person, company, or corporation who shall reserve, charge, or take for any loan or advance of money, or forbearance to enforce the collection of any sum of money, any rate of interest greater than 5 percent per month, either directly or indirectly, by way of commission for advances, discount, exchange, or the purchase of salary or wages; by notarial or other fees; or by any contract, contrivance, or device whatsoever shall be guilty of a misdemeanor[.]

■ The loan in question was made on June 1, 2002. Under the note, Plaintiff was required to repay Plaintiffs the sum of $31,250 on October 1, 2002, which was four months (122 days to be precise) after the loan was made. The difference between the amount borrowed and the amount to be repaid is $6,250. That this amount is interest there can be no doubt.

In *Norris v. Sigler Daisy Corp.*, 260 Ga. 271, 392 S.E.2d 242 (1990), the Georgia Supreme Court had occasion to consider the meaning of the word "interest" in O.C.G.A. § 7–4–18(a). There, the appellant contended that a loan in the face amount of $12,310.50, which included a so-called "origination fee" of $5,800, was usurious, but he had lost in the trial court and in the Court of Appeals. Reversing, the Supreme Court opined:

OCGA § 7–4–18(a) prohibits "... any rate of interest greater than 5 percent per month, either directly or indirectly, by way of commission for advances, discount, exchange, or the purchase of salary or wages; by notarial or other fees; or by any contract, contrivance, or device whatsoever...." The origination fee on the loan in question was clearly a fee paid for the extension of credit. The disclosure form provided by the lender indicated that the cost of the credit included that fee. Whether it be considered a "commission for advances," part of "other fees," or a "contrivance" or "device," we find the origination fee to be within the scope of the word "interest" as it is used in OCGA § 7–4–18.

*Id.* at 272–73, 392 S.E.2d 242.

The note in the present case refers to the person signing it, Mr. Khalif, as "Guarantor" and to Plaintiffs as "Investors" and states in the section entitled "Terms of Repayment," that the Guarantor "guarantee[s] the repayment with a twenty five percent (25%) return on investment." Gratuitous use of words like "guarantor" and "investors" do not transform a garden variety loan into a security so as to take the transaction out of O.C.G.A. § 7–4–

18(a). It is obvious that the use of investment language in the note was a mere contrivance to avoid the impact of O.C.G.A. § 7–4–18(a) and that the $6,250 to have been paid by Defendant to Plaintiffs four months after they loaned him $25,000 was "clearly a fee paid for the extension of credit." The note itself confirms that the charge of $6,250 is interest because it states that if there is a default, the Plaintiffs would receive "*additional* interest on the unpaid balance at the rate of 5% per month." (Emphasis added.)

Under O.C.G.A. § 7–14–18(a), Plaintiffs could legally charge interest on the $25,000 loan at a monthly rate not exceeding 5% of the principal amount or $1,250 per month. The note required Defendant to pay $6,250 for use of $25,000 for four months or $1,562.50 per month. Hence, Plaintiffs charged an usurious rate of interest during the stated term of the loan.

The daily late charge of "2% per day of the entire overdue amount" provided for in the note is also a fee paid for the extension of credit because this charge could bear no reasonable relationship to costs Plaintiffs might incur for administering the loan. If the term "entire overdue amount" was intended to include previously charged late fees, the amount due as of the date of this Order would be over $17 billion. If the note is read to mean that the 2% daily late charge and the 5% default interest rate were not to be compounded, the amount owed by Defendant as of the date of this Order would be over $400,000. Needless to say, these default interest charges are usurious.

The civil penalty for usury is the forfeiture of all interest and other charges owed, although the lender is allowed to recover the principal. *Norris v. Sigler Daisy Corp.*, 260 Ga. at 273, 392 S.E.2d 242.

Finally, in count IV Plaintiffs assert that the debt owed by Defendant is not dischargeable under section 523(a)(2)(A) of the Bankruptcy Code, which provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

To obtain a judgment on a claim of false representation, Plaintiffs must prove the "traditional elements of common law fraud: (1) the debtor made a false representation to deceive the creditor, (2) the creditor relied on the misrepresentation, (3) the reliance was justified, and (4) the creditor sustained a loss as a result of the misrepresentation." *SEC v. Bilzerian*, 153 F.3d 1278, 1281 (11th Cir.1998).

In count IV, Plaintiffs allege that Debtor made a false representation that he would repay them $31,250 on or before October 1, 2002 on which they justifiably relied to induce them to lend him $25,000.

Plaintiffs further allege in paragraphs 44, 45 and 46 of the complaint that filing the bankruptcy petition on June 3, 2002, failing to list Plaintiffs and the debt on his Schedules and failing to notify them of his bankruptcy filings were fraudulent acts, but these allegations do not state a claim upon which relief can be granted under section 523(a)(2)(A) because that conduct did not create the debt. Defendant had already obtained $25,000 from Plaintiffs at the time of these events. Even if Defendant was acting fraudulently in committing

these alleged acts, Plaintiffs do not allege that they thereby suffered any additional loss.

 The crux of what is left of the merits of this count is whether Plaintiffs' alleged reliance on Defendant's representation was justified. Merely saying that the reliance was justified does not make it so. A bare allegation in a complaint that reliance was justified is a conclusion of law, which a defendant does not admit by failing to respond to the complaint.

 " 'Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases.' " *Field v. Mans,* 516 U.S. 59, 71, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) (quoting Restatement (Second) of Torts, § 545A, Comment b). Reasonable reliance is an objective standard measured by the reliance that a reasonable person would place on the representation. It often entails a duty to investigate. By contrast, the standard for justifiable reliance is more relaxed in that investigation is required only in the event of clear warnings of deception arising from the plaintiff's own knowledge or intelligence in making a cursory observation or from facts known to the plaintiff at the time of reliance. *Id.* at 71–73, 116 S.Ct. 437. The Supreme Court further observed that there was still a place for testing the reasonableness of the reliance:

> As for the reasonableness of reliance, our reading of the Act does not leave reasonableness irrelevant, for the greater the distance between the reliance claimed and the limits of the reasonable, the greater the doubt about reliance in fact. Naifs may recover, at common law and in bankruptcy, but lots of creditors are not at all naive. The subjectiveness of justifiability cuts both ways, and rea-

sonableness goes to the probability of actual reliance.

*Id.* at 76, 116 S.Ct. 437.

Plaintiffs include the fact that they are medical doctors in the style of this adversary proceeding. Their profession suggests that they are highly educated people with the ability to think logically, critically and analytically about their business affairs. The usurious interest rates in the note suggest that Plaintiffs knew at the time they loaned $25,000 to Defendant that the loan involved a very high risk of nonpayment. If so, such an understanding by highly educated people probably triggered a duty to conduct an investigation of Defendant's finances and of his purported reason for needing the funds in order to make their reliance on his representations justifiable.

To prevail in this adversary proceeding, Plaintiffs must prove that they were justified in relying on Defendant's alleged false representation. To do so, they must introduce evidence showing their personal qualities and characteristics relevant to borrowing and lending money and explaining the circumstances surrounding the loan to Defendant, such as what they knew about Defendant, his reason for borrowing $25,000, and his ability to repay the loan in four months. They must credibly explain why they were charging him usurious interest rates. These background facts must demonstrate that a person with their personal qualities and characteristics would not have noticed any red flag casting enough doubt on the truthfulness of Defendant's representation to have required them to investigate further. If they did conduct an investigation into Defendant's representations, they must demonstrate, bearing in mind their personal qualities and characteristics, that their investigation was appropriate under the circumstances, resolved all issues raised by

the red flag that triggered the need for the investigation and did not reveal a new red flag.

Plaintiffs shall have thirty (30) days from entry of this Order within which to file affidavits or other proof that the Memorial Drive address was Defendant's dwelling house, usual place of abode or the place where he regularly conducted business at the time that the envelope containing the summons and complaint would have been delivered by the U.S. Postal Service and a brief of the issue of whether service at that address was sufficient under Bankruptcy Rule 7004, which must be served on the Defendant personally or by mail pursuant to Bankruptcy Rule 7004(b)(9) and at any other mailing address of Defendant of which they are presently aware. Alternatively, Plaintiffs may move for leave to obtain a new summons from the Clerk, *see* Fed.R.Civ.P. 4(m), made applicable by Fed. R. Bankr.P. 7004(a). Such a motion should be served on Defendant personally or by mail in the same manner described above, and Defendant would have the right to oppose the motion. If Plaintiffs take no action on the record in the thirty-day period from the entry of this Order, the Court will construe that inactivity as an intent not to prosecute this case and will dismiss it for failure to prosecute it.

Accordingly, it is

ORDERED that Plaintiffs' motion for default judgment is DENIED without prejudice and that Plaintiffs shall have thirty days from the date of entry of this Order within which to file documents indicating they intend to continue to prosecute this adversary proceeding.