**In re Edward Lee JACKSON and India Elaine Jackson, Debtors.**

**Georgia Lottery Corporation, Plaintiff,**

**v.**

**Edward Lee Jackson, d/b/a Mr. C's # 2, Defendant.**

**Bankruptcy No. 09–41419–MGD. Adversary No. 09–04058–MGD.**

United States Bankruptcy Court, N.D. Georgia, Rome Division.

Feb. 9, 2010.

---

Robin J. Leigh, Robin Joy Leigh, Georgia Department of Law, Atlanta, GA, for Plaintiff.

Terry Haygood, Law Offices of Terry Haygood, Rome, GA, for Defendant.

## ORDER

MARY GRACE DIEHL, Bankruptcy Judge.

The above-styled adversary proceeding is before the Court on Georgia Lottery Corporation's ("Plaintiff") Motion for Summary Judgment ("Motion"). (Docket No. 12). Plaintiff's Motion is supported by the Affidavit of Cameron Padgett ("Padgett Affidavit"), a copy of the Georgia Lottery Retailer Contract signed by Defendant ("Exhibit A"), a Retailer Application signed by Defendant ("Exhibit B"), Chapter 2 of the Georgia Lottery Retailer Rules and Regulations ("Exhibit C"), a Lottery Retailer Electronic Funds Transfer Authorization signed by Defendant ("Exhibit D"), an Account Summary for Defendant's Retailer Contract ("Exhibit E"), and copies of Plaintiff's discovery requests and Defendant's responses thereto ("Exhibits F–K"). Debtor Edward Lee Jackson ("Defendant") filed a Response in Opposition to Plaintiff's Motion ("Response"). (Docket No. 13). Accompanying Defendant's Response is the Affidavit of Defendant ("Defendant's Affidavit"). Plaintiff filed a Reply Brief to Defendant's Response. (Docket No. 14). For the reasons set forth herein, the Court **GRANTS** Summary Judgment in favor of Plaintiff. The undisputed material facts show that Defendant owed fiduciary duties to Plaintiff and that Defendant's debt to Plaintiff is the result of Defendant's failure to properly perform those duties and is therefore non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).

## I. FACTS

The undisputed material facts are as follows: In July of 2007, Defendant was the 100% owner, CEO, and CFO of Edward Lee Jackson, Inc., which was doing business as Mr. C's # 2. (Padgett Affidavit, ¶ 5; Exhibit B). On or about July 31, 2007, Defendant's company contracted to serve as a Georgia Lottery retailer. (Padgett Affidavit, ¶ 4; Exhibit A). Defendant personally signed the contract in his capacity as 100% owner. (Padgett Affidavit, ¶ 6; Exhibit A; Exhibit B).

Pursuant to the contract, Defendant agreed to sell lottery tickets, to deposit sales proceeds into a special bank account, and to be bound by the Georgia Lottery for Education Act and the Georgia Lottery Retailer Rules and Regulations. (Padgett Affidavit, ¶ 4; Exhibit A). The Georgia Lottery Retailer Rules and Regulations require a retailer to establish a separate and designated bank account, into which the retailer must deposit lottery sales proceeds daily, by no later than the close of the next banking day after the retailer collects the proceeds. (Padgett Affidavit, ¶ 9; Exhibit C, ¶ 2.12(A)). Additionally, the Rules and Regulations require the retailer to authorize Plaintiff to electronically transfer funds from the designated bank account. (Padgett Affidavit, ¶ 9; Exhibit

C, ¶ 2.12(A)). Defendant established the required bank account and authorized Plaintiff to electronically transfer funds from that account. (Padgett Affidavit, ¶ 10; Exhibit D). Finally, pursuant to the Rules and Regulations, the proceeds and all other funds due to Plaintiff constitute a trust fund in favor of Plaintiff until the proceeds are paid to Plaintiff. (Padgett Affidavit, ¶ 9; Exhibit C, ¶ 2.12(A)).

When Plaintiff seeks to collect funds from the designated bank account, it does so in accordance with the Rules and Regulation provisions for accounting methods. (Padgett Affidavit, ¶ 11). According to those provisions, an accounting period is from 6:00 a.m. on Sunday through midnight on the following Saturday. (Padgett Affidavit, ¶ 11; Exhibit C, ¶ 2.11(A)). All tickets "settled" within that period are invoiced to the retailer. (Padgett Affidavit, ¶ 11; Exhibit C, ¶ 2.11(C)). A pack of tickets is "settled" within 21 days following the activation of that pack. (Padgett Affidavit, ¶ 12; Exhibit C, ¶ 2.11(C)). Therefore, a pack of tickets that has been activated will be invoiced to the retailer within 21 days of activation.

Plaintiff sought to collect funds from Defendant's designated bank accounts for the accounting weeks ending on May 17, 2008, and May 24, 2008. (Padgett Affidavit, ¶ 18–19). According to the computer terminals in Defendant's store, Defendant's company had activated, sold, and settled tickets in those weeks. (Padgett Affidavit, ¶ 18; Exhibit E). As Defendant's company, through its officers, employees, or agents, failed to deposit sufficient funds into the designated account, Plaintiff's attempt to electronically transfer the funds was unsuccessful. (Padgett Affidavit, ¶ 20). Plaintiff terminated Defendant's retailer contract on or about June 4, 2008, due to the lack of sufficient funds in the designated account. (Padgett

Affidavit, ¶ 7). Neither Defendant nor Defendant's company has remitted all funds due to Plaintiff, resulting in a debt of $19,940.06. (Padgett Affidavit, ¶ 24–26; Exhibit E). Defendant admits that Plaintiff is owed $19,940.06 for tickets "activated and sold" at his store. (Exhibit F, ¶ 5; Exhibit G).

While Defendant does not dispute the facts above, Defendant's Affidavit includes additional facts. Defendant has a history of medical problems. (Defendant's Affidavit, ¶ 2–12). At approximately the same time as Defendant began operating his business as Mr. C's # 2, Defendant developed an allergic reaction to a medical procedure. (Defendant's Affidavit, ¶ 7). From December 17, 2007, to December 30, 2008, Defendant was unable to perform his work on a regular basis. (Defendant's Affidavit, ¶ 13). Thus, on May 20, 2008, when Plaintiff sent a representative to audit and shut down the company's retailer terminal, Defendant had not been present at the store for most of that morning, nor on the preceding day. (Defendant's Affidavit, ¶ 15, 22). Defendant returned to the store on May 20, 2008, at 10:00 a.m. (Defendant's Affidavit, ¶ 21). In Defendant's absence, "the store was not in [Defendant's] control, but in the control of [his] store manager." (Defendant's Affidavit, ¶ 22). Prior to Defendant's return to the store, sometime between the hours of 6:00 p.m. on May 19, 2008, and 9:00 a.m. on May 20, 2008, twelve packets of lottery tickets, worth $300 per pack, "went missing." (Defendant's Affidavit, ¶ 14). During her audit of the terminal, Plaintiff's representative discovered that the 12 packets had been activated. (Defendant's Affidavit, ¶ 16). Defendant could not determine who activated the packets because a display rack blocked his security camera's view. (Defendant's Affidavit, ¶ 19). Further, Defendant does not know which employees may have been in the store. (De-

fendant's Affidavit, ¶ 18). Defendant did not file a police report on the missing tickets. (Defendant's Affidavit, ¶ 20).

With regard to the employees of a lottery retailer, Plaintiff's evidence shows that the Georgia Lottery Rules and Regulations require a retailer to supervise and control employees. (Padgett Affidavit, ¶ 13; Exhibit C, ¶ 2.04(D)). The Rules and Regulations further provide that a retailer "shall be fully responsible and liable for [employees'] conduct, as it relates to the sale of lottery Tickets." (Padgett Affidavit, ¶ 13; Exhibit C, ¶ 2.04(D)).

## II. *STANDARD APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT*

Rule 56(c) of the Federal Rules of Civil Procedure, applicable herein by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See also, Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Maniccia v. Brown,* 171 F.3d 1364, 1367 (11th Cir. 1999). In reviewing a motion for summary judgment, the court must view the record and all inferences therefrom in the light most favorable to the non-moving party. *See WSB–TV v. Lee,* 842 F.2d 1266, 1270 (11th Cir.1988). "The party seeking summary judgment bears the initial burden to demonstrate to the [trial] court the basis for its motion for summary judgment and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes show an absence of any genuine issue of material fact.... If the movant successfully dis-

charges its burden, the burden then shifts to the non-movant to establish, by going beyond the pleadings, that there exist genuine issues of material facts." *Hairston v. Gainesville Sun Publ'g Co.,* 9 F.3d 913, 918 (11th Cir.1993), *reh'g denied,* 16 F.3d 1233 (11th Cir.1994). The non-movant may not simply rest on his pleadings, but must show, by reference to affidavits or other evidence, that a material issue of fact remains. Fed.R.Civ.P. 56.

## III. *APPLICATION OF LAW*

■ Section 523(a) of the Bankruptcy Code provides for various exceptions to the discharge of specific debts. Section 523(a)(4) states that a discharge under § 727 does not discharge an individual debtor from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). The creditor bears the burden of proving nondischargeability by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 288, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ The first question is whether a fiduciary relationship existed between Plaintiff and Defendant. Whether a fiduciary relationship exists for purposes of § 523(a)(4) is a question of federal law. *In re Khalif,* 308 B.R. 614, 622 (Bankr. N.D.Ga.2004). The United States Supreme Court has articulated a narrow definition of "fiduciary," holding that the trust upon which the fiduciary relationship relies must be an express or technical trust. *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333, 55 S.Ct. 151, 79 L.Ed. 393 (1934). The fiduciary duties "must be specifically set forth so that a trust relationship is expressly and clearly imposed." *Eavenson v. Ramey,* 243 B.R. 160, 165 (N.D.Ga. 1999). The Georgia Lottery for Education Act, codified at O.C.G.A. § 50–27–21, by which Defendant agreed to be bound, sets

forth all the elements of a technical trust. *In re Daniel,* 225 B.R. 249, 251–252 (Bankr.N.D.Ga.1998). The Georgia statute creates a trust fund, identifies the trust *res,* and outlines a lottery retailer's fiduciary duty "to preserve and account for lottery proceeds." O.C.G.A. § 50–27–21(a). The trust *res,* which is comprised of "all proceeds from the sale of lottery tickets or shares," includes "unsold instant tickets." *Id.* Therefore, so long as Defendant was a lottery retailer, Defendant owed a fiduciary duty to Plaintiff to preserve and account for the proceeds from ticket sales and to preserve and account for unsold tickets.

■■■■ The second question is whether Defendant's debt to Plaintiff is for defalcation while acting in Defendant's fiduciary capacity. Defalcation is "a failure to produce funds entrusted to a fiduciary," but "does not have to rise to the level of 'fraud,' 'embezzlement,' or even 'misappropriation.'" *Quaif v. Johnson,* 4 F.3d 950, 955 (11th Cir.1993). When a lottery retailer's account does not contain sufficient funds to pay all lottery proceeds owed to Plaintiff, without an explanation for that deficiency, the retailer's actions constitute defalcation. *In re Daniel,* 225 B.R. at 252. Plaintiff has offered uncontroverted evidence that Defendant's account did not contain sufficient funds to pay all lottery proceeds owed to Plaintiff. Whether Defendant has offered a suitable explanation for that deficiency is the issue at hand.

In his Response, Defendant argues that genuine issues of material fact remain to be determined. The two issues Defendant identified are as follows: (1) there is a discrepancy regarding which lottery tickets were actually sold and (2) whether the theft of tickets by Defendant's employee renders the debt non-dischargeable. The second issue is a question of law and does not preclude the Court from granting summary judgment at this time. As to the first issue, Defendant's Affidavit includes evidence regarding tickets that were activated, unaccounted for, but not "actually sold" by Defendant's business. Additionally, Defendant offered evidence of his personal illness and the fact that his business was under the control of a store manager at the time the activated tickets went missing. Plaintiff argues in its Reply, and the Court agrees, that Defendant has failed to raise an issue of material fact.

Defendant's brief relied on *In re Thompson,* 296 B.R. 563 (Bankr.M.D.Ga. 2003), and *In re Daniel,* 225 B.R. 249 (Bankr.N.D.Ga.1998), to argue that genuine issues of material fact exist. In *Thompson,* the defendant presented an affidavit stating that all proceeds were placed into a separate bank account and that all unsold tickets were returned to the plaintiff's representative. Here, Defendant is not claiming that all proceeds and unsold tickets were delivered to Plaintiff, but that some tickets were stolen. In *Daniel,* the Bankruptcy Court was unmoved by an allegation of theft when the defendant presented no facts to support that allegation. Here, Defendant has provided an affidavit alleging theft. Despite that, however, Defendant has alleged insufficient facts to defend against the claim of defalcation and has identified no genuine issues of material fact.

Neither of the facts that Defendant has provided are material when measured against the legal standard on which the Court bases its decision. First the Court will address Defendant's facts regarding Defendant's lack of day-to-day supervision of the store, then the Court will address the theft of tickets.

■■■■ Defendant suggests that one explanation for his failure to preserve all lottery proceeds and prevent the theft of lottery tickets is that his store was not under his control, but was under the control of his

employee, the store manager. "[T]he fact that the debtor is not actively engaged in the day-to-day operations of the business and is not the person who collects and deposits the lottery proceeds does not mean that the debtor has no responsibility to account for the proceeds." *In re Ingram,* 2008 Bankr.LEXIS 1036 (Bankr. N.D.Ga. February 29, 2008). Indeed, Defendant's duties under the Georgia Lottery Rules and Regulations explicitly include duties to supervise and control employees, and the Rules and Regulations state that Defendant, as a retailer, is responsible and liable for his employees' actions. Therefore, neither Defendant's lack of daily supervision at the store nor his lack of supervision on the specific dates when a theft may have occurred prevents the Court from finding this debt to be nondischargeable.

Defendant's main argument is that whether tickets were stolen is an unresolved issue of fact and that the theft of the tickets should absolve Defendant of his liability and make that debt dischargeable.[1] Courts have held lottery debts to be nondischargeable despite claims of theft, particularly when, as here, the debtor failed to account for proceeds for periods of weeks. *See In re Sun,* 2004 Bankr.LEXIS 2266 (Bankr.N.D.Ga. Sept. 27, 2004) (finding defalcation when a debtor failed to verify deposits for three weeks). While there are some court decisions that suggest, in *dicta,* that theft could be a defense to claims of defalcation, Defendant here has failed to produce sufficient facts to succeed in that defense. *See Id.* (stating that failure to account for proceeds for one day due to theft might be an innocent act); *In re Ingram,* 2008 Bankr.LEXIS 1036 (Bankr.N.D.Ga. February 29, 2008) (stating that evidence of

theft could preclude a finding of defalcation if the debtor "employed reasonable internal controls to avoid such a theft"). Here, Defendant failed to remit proceeds for two weeks, when proceeds are required to be deposited daily. Additionally, Defendant provided no evidence that he employed any internal controls to monitor his staff or otherwise avoid the theft of tickets. The only measure of security that Defendant identifies is a security camera, which was positioned such that it was blocked by a display rack. While Defendant does not dispute that he had a duty to supervise and control his employees, Defendant's description of the day the tickets were discovered to be missing includes his statement that "if any other employees were present, I do not know who they were." Finally, Defendant did not report the theft to the police. The facts that Defendant provides merely serve to confirm that Defendant's debt to Plaintiff is a result of Defendant's failure to perform his fiduciary duties. Accordingly, as Plaintiff has proven nondischargeability by a preponderance of the evidence and there are no remaining issues of material fact, it is

**ORDERED** that Summary Judgment is **GRANTED** in favor of Plaintiff.

**IT IS FURTHER ORDERED** that Defendant's debt to Plaintiff of $19,940.06 is hereby deemed **NONDISCHARGEABLE.** Judgment for Plaintiff will be entered accordingly.

The Clerk shall serve a copy of this Order upon Plaintiff, counsel for Plaintiff, Defendant, and counsel for Defendant.

---

**1.** The Court notes that the theft of the tickets only concerns $3600 of the $19,940.06 at issue.